*United States v. Bryant*

# United States Court of Appeals
## for the Second Circuit

———————————————————

August Term 2019

(Submitted: April 13, 2020    Decided: September 24, 2020)

No. 18-3569

———————————————————

UNITED STATES OF AMERICA,

*Appellee,*

— v. —

ROBBULL BRYANT, RICH,

*Defendant-Appellant.*

———————————————————

Before:    LIVINGSTON, *Chief Judge*, PARKER and BIANCO, *Circuit Judges*.

Defendant-Appellant Robbull Bryant appeals from a judgment of conviction entered on November 20, 2018, in the United States District Court for the District of Vermont (Sessions III, *J.*), following his guilty plea to one count of conspiring to distribute cocaine base in violation of 21 U.S.C. §§ 846, 841(b)(1)(B), and one count of possession of a firearm as a convicted felon in violation of 18 U.S.C. §§ 922(g), 924(a)(2).  The district court sentenced Bryant to 90 months' imprisonment to be followed by a four-year term of supervised release.

On appeal, Bryant challenges the merits of his felon in possession of a firearm conviction in light of the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019).  Bryant further argues that his 90-month term of

imprisonment is procedurally and substantively unreasonable, and challenges the imposition of two supervised release conditions—namely, the notification-of-risk condition (the "risk" condition) and the condition restricting his communications with known felons (the "communication" condition).

As explained below, we hold that Bryant's guilty plea to possessing a firearm as a convicted felon remains valid, even in light of *Rehaif*, because it is plain that Bryant knew of his unlawful status when he possessed the firearm and there is no reasonable probability that he would have not pled guilty had he been properly informed that such knowledge was a requirement for conviction under 18 U.S.C. § 922(g). We also conclude that there was no error at sentencing in the district court's consideration of potential sentencing disparities among similarly situated defendants, and that Bryant's 90-month sentence was not procedurally or substantively unreasonable. Finally, we hold that the two disputed conditions of supervised release imposed on Bryant are not unconstitutionally vague, but we will remand (1) the risk condition so that the district court can formally incorporate its oral amendment of that condition into the written judgment of conviction, and (2) the communication condition so that the district court may provide the necessary justification for restricting Bryant's communications with his brother, or exempt such communications from that condition.

Accordingly, we AFFIRM Bryant's conviction and sentence, except we VACATE the judgment as to the two challenged conditions of supervised release, and REMAND in that respect only for further proceedings consistent with this opinion.

MICHELLE ANDERSON BARTH, The Law Office of Michelle Anderson Barth, Burlington, VT, *for Defendant-Appellant*.

NATHANAEL T. BURRIS (Gregory L. Waples, *on the brief*), Assistant United States Attorneys, *for* Christina E. Nolan, United States Attorney for the District of Vermont, Burlington, VT, *for Appellee*.

_____

JOSEPH F. BIANCO, *Circuit Judge*:

Defendant-Appellant Robbull Bryant appeals from a judgment of conviction entered on November 20, 2018, in the United States District Court for the District of Vermont (Sessions III, *J.*), following his guilty plea to one count of conspiring to distribute cocaine base in violation of 21 U.S.C. §§ 846, 841(b)(1)(B), and one count of possession of a firearm as a convicted felon in violation of 18 U.S.C. §§ 922(g), 924(a)(2). The district court sentenced Bryant to 90 months' imprisonment to be followed by a four-year term of supervised release.

On appeal, Bryant challenges the merits of his felon in possession of a firearm conviction in light of the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019). Bryant further argues that his 90-month term of imprisonment is procedurally and substantively unreasonable, and challenges the imposition of two supervised release conditions—namely, the notification-of-risk condition (the "risk" condition) and the condition restricting his communications with known felons (the "communication" condition).

As explained below, we hold that Bryant's guilty plea to possessing a firearm as a convicted felon remains valid, even in light of *Rehaif*, because it is plain that Bryant knew of his unlawful status when he possessed the firearm and there

is no reasonable probability that he would have not pled guilty had he been properly informed that such knowledge was a requirement for conviction under 18 U.S.C. § 922(g). We also conclude that there was no error at sentencing in the district court's consideration of potential sentencing disparities among similarly situated defendants, and that Bryant's 90-month sentence was not procedurally or substantively unreasonable. Finally, we hold that the two disputed conditions of supervised release imposed on Bryant are not unconstitutionally vague, but we will remand (1) the risk condition so that the district court can formally incorporate its oral amendment of that condition into the written judgment of conviction, and (2) the communication condition so that the district court may provide the necessary justification for restricting Bryant's communications with his brother, or exempt such communications from that condition.

Accordingly, we AFFIRM Bryant's conviction and sentence, except we VACATE the judgment as to the two challenged conditions of supervised release, and REMAND in that respect only for further proceedings consistent with this opinion.

# I. BACKGROUND

## A. Facts[1]

In late 2014, law enforcement began investigating a drug-trafficking operation, involving the distribution of heroin and cocaine base, in the area of Brattleboro, Vermont. Between July 2015 and August 2016, law enforcement conducted 11 controlled purchases of narcotics (heroin, cocaine base, and cocaine) from members of the drug-trafficking business, which were surveilled by audio and visual means. In three of those transactions, Bryant was the individual who personally sold the cocaine base or cocaine. In the spring of 2016, law enforcement discovered that the base of operations was moved from Brattleboro to a residence in Putney, Vermont (the "Putney Residence"). A co-conspirator and a customer of the drug business separately identified Bryant as a leader of the drug organization.

The drug-trafficking operation also involved the use of firearms and violence. For example, on August 26, 2016, Bryant and an associate participated in a shootout outside the Putney Residence. This gunfight was precipitated by a dispute over $30 in narcotics and, although Bryant asserted that he was not the

---

[1] The facts here are derived from the Pre-Sentence Report ("PSR") to which no factual objections were made at the sentencing.

aggressor during the incident, Bryant discharged rounds in an exchange of gunfire with one of the individuals with whom the dispute arose. Bryant was stopped in a car in the vicinity of the Putney Residence shortly after the incident and was taken into custody. That same day, police searched the Putney Residence and seized marijuana and drug paraphernalia (including a crack pipe and scales), as well as a semi-automatic Ruger .40 caliber firearm. The police also recovered .40 caliber shell casings in the driveway and on the front porch of the Putney Residence. Several witnesses also reported observing Bryant carry various firearms in his possession on other occasions, including instances in which he waved or flashed a firearm in front of other individuals.

On August 17, 2016, a criminal complaint was filed charging Bryant with distribution of cocaine base. Subsequently, on September 30, 2016, a federal grand jury returned a seventeen-count superseding indictment. In that indictment, Bryant was charged with one count of conspiring to distribute heroin, cocaine, and 28 grams or more of cocaine base; two counts of being a felon in possession of a firearm; one count of possessing a firearm in furtherance of a drug trafficking crime; and four counts of distribution of cocaine base. The felony that formed the basis of his felon-in-possession charge was his 2007 conviction in Virginia state

court for grand larceny.  Bryant was sentenced to three years in prison for that conviction, but the sentence was suspended in lieu of 10 years of probation, so he spent no time in jail.[2]  Five of Bryant's co-conspirators were also named in the superseding indictment.

## B.     Bryant's Guilty Plea and Sentencing

On June 7, 2018, Bryant pled guilty, pursuant to a plea agreement with the government, to a two-count superseding information charging him with the following:  (1) one count of conspiring to distribute 28 grams or more of cocaine base from the fall of 2014 through August 26, 2016, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B); and (2) one count of being a felon in possession of a firearm in August 2016, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  In the plea agreement, the parties agreed, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), that Bryant should receive a term of imprisonment of no greater than ten years.

Sentencing took place on November 19, 2018.  With respect to the calculation of the United States Sentencing Guidelines range, the Probation Department determined that Bryant had a total offense level of 33 and a criminal history

---

[2] Bryant was removed from further supervised probation after one year.

category III, which resulted in an advisory Guidelines range of 168 to 210 months' imprisonment.

At sentencing, the parties stipulated to the total offense level of 33, consisting of the following: a base offense level of 28 for a conspiracy involving at least 196 grams of cocaine base, U.S.S.G. § 2D1.1(c)(6); a two-level firearm enhancement, *id*. § 2D1.1(b)(1); a two-level enhancement for the use of violence, *id*. § 2D1.1(b)(2); a two-level enhancement for maintaining a drug-distribution premises, *id*. § 2D1.1(b)(12); a two-level enhancement for Bryant's role in the offense, *id*. § 3B1.1(c); and a three-level reduction for acceptance of responsibility, *id*. § 3E1.1. With respect to the criminal history calculation, Bryant argued that he should only be a criminal history category II because he should not receive a two-point increase for committing the crime while under supervision for a previous petit larceny conviction and, even if the two points were properly counted, he is entitled to a downward departure in his criminal history category because it overrepresented the seriousness of such history.

As to the ultimate sentence, Bryant argued that the district court should impose five years' imprisonment, which was the mandatory minimum sentence based upon the narcotics conspiracy count, while the government argued for a

8

sentence of ten years' imprisonment. In support of his argument for a variance from the Guidelines range, Bryant noted, among other things, that the district court had already sentenced two of his co-defendants: Alfred Spellman, who had received a time-served sentence of approximately two years' imprisonment; and Earl Brown, who had received a sentence of 48 months' imprisonment. Bryant noted that Spellman was also involved in the August 26th shooting incident, including discharging his weapon with Bryant. Thus, Bryant contended that these co-defendants were "of equal standing in the offense" and, to avoid unwarranted disparity, he should receive a sentence of no more than five years' imprisonment. App'x at 104.

On this issue, the government responded that Bryant's extensive involvement with firearms and leadership role distinguished him from other members of the conspiracy. Moreover, with respect to the particular co-defendants referenced by Bryant, the government noted that it was unable to prove any controlled purchases from Spellman, and that Brown was not Bryant's primary supplier. Therefore, the government argued that these distinctions would further explain any disparity in their sentencings as compared to the ten-year sentence being requested by the government.

The district court preliminarily determined that the advisory Guidelines range was 168 to 210 months' imprisonment, based upon a total offense level of 33 and a criminal history category III, and also noted that it would consider Bryant's argument regarding the criminal history category as part of his overall request for a non-Guidelines sentence. Within that framework, the district court granted Bryant's request to have his criminal history category lowered to category II after concluding that the lower category was "more suitable" in light of the nature of his prior convictions. App'x at 191. The district court also lowered the total offense level from a level 33 to a level 28 because, based upon a balancing of the various sentencing factors (including Bryant's genuine remorse and post-arrest rehabilitation), the district court concluded that the range that resulted from that additional adjustment (namely, 87 to 108 months' imprisonment) was sufficient to accomplish the purposes of sentencing in this case.[3] After explaining its reasoning with respect to a number of the sentencing factors, including Bryant's relative

---

[3] Although the district court referred to this determination as an "adjustment" to the total offense level, App'x at 193, it is clear that this was a variance from the otherwise applicable Guidelines range (as opposed to some type of downward departure within the advisory Guidelines system) because both the parties and the district court stated their agreement that the correct total offense level was 33, and the district court further explained it was applying the lower offense level of 28 based upon consideration of all the sentencing factors.

culpability, the district court sentenced Bryant to 90 months' imprisonment on each of the two counts to run concurrently, followed by four years of supervised release.

Bryant also raised objections at the sentencing regarding two of the proposed conditions of supervised release. First, Bryant objected to the risk condition, which allowed the Probation Department to require Bryant to notify another person if the probation officer determined that Bryant posed a risk to that person. Bryant contended that the condition unlawfully delegated authority to the Probation Department and that, in any event, the condition is constitutionally vague. The district court agreed that the risk condition should be modified to require judicial approval.[4] However, the district court imposed the modified risk condition, notwithstanding Bryant's remaining vagueness objection.

Second, Bryant objected to the communication condition, which would limit his ability to communicate or interact with individuals known to be engaged in criminal activity or known to have been convicted of a felony. More specifically,

---

[4] The oral modification by the district court during sentencing was not included in the written judgment. However, the addendum to the PSR included a proposed modified version of the risk condition, which incorporated judicial oversight and a limitation on what information would be considered in determining Bryant's "risk." Addendum to the PSR at 32.

Bryant asserted that the communication condition would interfere with his right to associate with his brother, who was a convicted felon. The district court responded:

> Well do you know if that is a problem here? I mean I've never seen a situation which when a brother has a felony conviction that brother is not allowed to talk with other brothers who may have a felony conviction. Probation officers just generally allow that to happen.

App'x at 172. When Bryant explained that he did not want to rely upon any practice by the Probation Department, but rather wanted the condition to reflect the exclusion of communications with family members from this restriction, the district court denied that request.

This appeal followed.

## II.    DISCUSSION

Bryant raises three claims on appeal. First, he contends that his guilty plea for being a felon-in-possession of a firearm, under 18 U.S.C. § 922(g)(1), should be vacated in light of the Supreme Court's recent decision in *Rehaif*. Second, he asserts that his 90-month sentence was procedurally and substantively unreasonable. Finally, he argues that the risk condition and communication condition imposed by the district court as a component of his term of his supervised release are unlawful. We will address each argument in turn.

## A.  The *Rehaif* Challenge

Bryant was convicted of being a felon in possession of a firearm pursuant to 18 U.S.C. § 922(g)(1).  Section 922(g) prohibits possession of firearms by people who fall into certain groups:  here, "any person . . . who has been convicted in any court of[ ] a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1).  At the time Bryant pled guilty to the instant crime, a conviction under § 922(g) did not require that the defendant knew he belonged to one of the prohibited classes when he knowingly possessed the firearm or ammunition.  *See United States v. Amante*, 418 F.3d 220, 221 n.1 (2d Cir. 2005); *United States v. Rehaif*, 888 F.3d 1138, 1145 n.3 (11th Cir. 2018) (collecting cases).  However, in June 2019—after Bryant had been convicted and had already filed his opening brief in this appeal—the Supreme Court changed the legal landscape.  In *Rehaif*, the Court held that, under § 922(g), the government must prove not only that the defendant knew he possessed the firearm, but also that "he knew he belonged to the relevant category of persons barred from possessing a firearm."  139 S. Ct. at 2200.  Thus, although a felon need not specifically know that it is illegal for him to possess a firearm under federal law, *Rehaif* requires him to know, at the time he possessed the firearm, that he "ha[d] been convicted in any court of[ ] a crime

13

punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1); *see Rehaif*, 139 S. Ct. at 2194 ("To convict a defendant, the Government . . . must show that the defendant knew he possessed a firearm and also that he knew he had the relevant *status* when he possessed it." (emphasis added)).

Here, because the knowledge-of-status requirement had not previously been recognized, it was omitted from every part of Bryant's case: the charging document to which Bryant pled guilty (namely, an information) did not allege knowledge of status, the district court did not advise him of that requirement at the guilty plea proceeding, and the district court did not identify a factual basis for concluding that Bryant had that knowledge. Thus, on appeal, Bryant contends that the conviction must be vacated for two independent reasons: (1) the district court did not have jurisdiction over him because the charging document was deficient; and (2) the failure to cover this legal requirement at his plea proceeding violated Rule 11 of the Federal Rules of Criminal Procedure.

### 1. Jurisdiction

Bryant argued in his opening brief that, because the information charging him was deficient, the district court had no jurisdiction over him. In his reply brief, however, he acknowledges that this argument is foreclosed by our recent decision

in *United States v. Balde*, 943 F.3d 73 (2d Cir. 2019). Bryant is correct. As we held in *Balde*, omission of the knowledge-of-status requirement in a charging document does not affect the district court's jurisdiction. *Id.* at 92 ("[T]he indictment's failure to allege that [the defendant] knew" of his unlawful status "was not a jurisdictional defect."). Thus, Bryant's jurisdictional argument fails.

### 2. Rule 11 of the Federal Rules of Criminal Procedure

Bryant also argues that the district court did not properly inform him at the time of his guilty plea of "the nature of each charge to which [he] [wa]s pleading" or determine that there was a "factual basis for the plea"—particularly, with respect to the knowledge-of-status requirement—as required under Rule 11. *See* Fed. R. Crim. P. 11(b)(1)(G), (b)(3). Based upon these Rule 11 violations, Bryant asserts that his § 922(g)(1) conviction must be overturned. Because Bryant did not object to the district court's description of the charges at his plea proceeding, his challenge is reviewed for plain error.[5]

---

[5] Bryant argues that this Court should apply a "modified plain error" standard. We have sometimes applied a modified plain error standard—requiring the government to bear the burden of establishing that the error did not affect the defendant's substantial rights—in cases where the error was the result of a supervening change in law. *See United States v. Viola*, 35 F.3d 37, 42-43 (2d Cir. 1994). However, that approach was called into question by the Supreme Court's decision in *Johnson v. United States*, 520 U.S. 461 (1997). *See, e.g., United States v. Botti*, 711 F.3d 299, 308-09 (2d Cir. 2013) (questioning *Viola*'s modified plain error rule in light of *Johnson*, but declining to decide the issue). In any event, our

"Under the plain error standard, an appellant must demonstrate that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Bastian*, 770 F.3d 212, 219-20 (2d Cir. 2014) (quotation marks and alteration omitted). The government concedes that the failure to inform Bryant of the knowledge-of-status requirement in § 922(g)(1) at the plea proceeding was a clear error. Thus, the first two prongs of the plain error standard are not at issue on appeal.

In determining whether the error affected "substantial rights" under the third prong, the Supreme Court has explained that "in most cases it means that the error must have been prejudicial:  It must have affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993).  More particularly, when seeking a reversal of a guilty plea based upon a Rule 11 violation, a defendant "must show a reasonable probability that, but for the error,

conclusion would not differ in this case depending on who bears the burden of persuasion.  Accordingly, we decline to resolve the parties' disagreement over whether "modified plain error" or our standard plain-error review applies. *See United States v. Miller*, 954 F.3d 551, 558 & n.16 (2d Cir. 2020).

he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004); *accord Balde*, 943 F.3d at 96. In making that assessment, "a reviewing court must look to the entire record, not to the plea proceedings alone." *Dominguez Benitez*, 542 U.S. at 80. Moreover, "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded," but "should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017); *accord United States v. Hobbs*, 953 F.3d 853, 857-58 (6th Cir. 2020) (quoting *Lee* in rejecting a *Rehaif* challenge to a guilty plea).

Bryant argues that the failure to advise him of the knowledge-of-status requirement at his plea proceeding satisfies the third prong. Specifically, he asserts that there is evidence supporting an inference that he lacked knowledge of his unlawful status at the time he possessed a firearm. As support, he notes that he served no time in prison on his grand larceny conviction and that the conviction was more than ten years old at the time of his plea. Thus, "[g]iven these circumstances," he argues, he would not have pled guilty had he known of the additional knowledge requirement because "the government would have [had] significant difficulty convincing a jury that [he] knew and remembered he had

been convicted of a crime punishable by a term of imprisonment exceeding one year." Bryant Reply Br. at 6. We find Bryant's arguments unpersuasive.

In the wake of *Rehaif*, we have vacated a § 922(g) conviction in a case where the defendant was sentenced to less than one year in prison on the prior felony, *United States v. Johnson*, No. 18-2033-CR, 2020 WL 3864945, at *2-3 (2d Cir. July 9, 2020) (summary order) ("[T]he fact that neither of [the defendant's] two felony convictions actually resulted in prison sentences of more than a year weighs . . . in favor of concluding that [the defendant] might *not* have pleaded guilty absent error."), and in a case where the defendant's legal status (in terms of whether he was illegally or unlawfully in the United States when he possessed the firearm) was "hotly contested" in the district court, *Balde*, 943 F.3d at 97. On the other hand, we have upheld felon-in-possession convictions after *Rehaif* where the defendant had actually served more than one year in prison on the prior conviction. *See, e.g.*, *United States v. Miller*, 954 F.3d 551, 560 (2d Cir. 2020) (defendant was previously sentenced to ten years' imprisonment with execution suspended after three years, "which remove[d] any doubt that [he] was aware of his membership in § 922(g)(1)'s class").[6] The rationale for the dichotomy is simple: defendants who

---

[6] Moreover, we have issued a series of non-precedential summary orders since *Rehaif* addressing Rule 11 challenges where, similar to the defendant in *Miller*, the defendant

went to prison for over one year would obviously be aware that the crime was punishable by more than one year in jail (and are not likely to have forgotten), and those who were sentenced to less than one year might not have known that they could have been sentenced to more than one year.

The facts here fall between a gap left in these two lines of cases. Here, Bryant was sentenced on the prior felony in Virginia to three years in prison, but he served no actual jail time because the sentence was suspended. Moreover, that 2007 conviction was about a decade before he possessed the firearm at issue in this case in August 2016. Thus, Bryant contends that these facts weigh in favor of concluding that there is a "reasonable probability that, but for the error, he would

---

had been sentenced to, and served, more than one year in prison on the prior felony. In each of those cases, as in *Miller*, we rejected the *Rehaif* claim because the fact that the defendant had actually served a sentence of more than one year on the prior felony made it highly unlikely that the defendant was unaware of his prohibited status or that the knowledge-of-status requirement would have impacted the outcome of the case. *See, e.g.*, *United States v. Mikelinich*, 798 F. App'x 697, 698 (2d Cir. 2020) ("[The defendant] also admitted that he pled guilty in 2004 to being a felon in possession (based on yet another prior felony) and that he was sentenced to 15 months in prison and three years of supervised release. Given that [the defendant] had in fact been sentenced to more than one year in prison, there is no reason to believe that he would not have pleaded guilty had he been told that the government would need to prove that he knew he was a felon when he possessed the firearm[ ]." (alteration in original) (quotation marks omitted)); *United States v. Keith*, 797 F. App'x 649, 652 (2d Cir. 2020) ("[The defendant] had been convicted in October 2008 of criminal sale of cocaine and served over two years in prison.").

not have entered the plea." *Dominguez Benitez*, 542 U.S. at 83. However, those are not all the facts before us. The government has also submitted the 2007 judgment from Bryant's grand larceny conviction in Virginia state court.[7] That judgment states that Bryant "stands indicted for a felony" and that, in connection with Bryant's guilty plea, the Virginia court had "made [an] inquiry" and was "of the opinion that [Bryant] *fully understood* the nature and effect of his plea and of *the penalties that may be imposed upon his conviction*." Gov. Suppl. App'x at 1 (emphases added). This recitation is in accord with the Rules of the Supreme Court of Virginia, which mandate that "[a] circuit court shall not accept a plea of guilty . . . to a felony charge without first determining that the plea is made voluntarily with an understanding of the nature of the charge *and the consequences of the plea*." Va. Sup. Ct. R. 3A:8(b)(1) (emphasis added). The judgment further states that Bryant was sentenced to three years in prison, but the sentence was suspended in lieu of

---

[7] Bryant argues that it is improper for the government to submit evidence—here, the state judicial order—for the first time on appeal. However, the evidence is not in the district court record because the government had no reason to submit evidence of Bryant's knowledge of his felon status (both because he pled guilty and it was before *Rehaif* was decided). Because there is no reason to doubt the judgment of conviction—and Bryant does not dispute its validity—we will consider that evidence on appeal. *Miller*, 954 F.3d at 559-60 ("We will not penalize the government for its failure to introduce evidence that it had but that, prior to *Rehaif*, it would have been precluded from introducing. Therefore, in the limited context of our fourth-prong [plain error] analysis, we will consider reliable evidence in the record on appeal that was not a part of the trial record . . . .").

probation. Gov. Suppl. App'x at 1. Importantly, the Virginia court also certified "that at all times during this proceeding the defendant was present in person." Gov. Suppl. App'x at 2.

This evidence "removes any doubt that [Bryant] was aware of his membership in § 922(g)(1)'s class." *See Miller*, 954 F.3d at 560. The record of conviction shows that the Virginia court presiding over his grand larceny case informed Bryant—in accord with the Virginia Supreme Court's rules—of the penalties which could be imposed at the time of his guilty plea, which would necessarily entail advising him that the crime was punishable by a sentence of imprisonment of more than one year. Moreover, Bryant would also have heard, at his sentencing, that he was being sentenced to *three years' imprisonment*, even though that sentence was being suspended. Thus, this situation is not akin to the hypothetical situation that concerned the Supreme Court in *Rehaif*, where a defendant received a sentence of probation on the prior felony and might not have understood that the maximum punishment for the crime was more than one year, especially if he had gone to trial on the prior felony (and thus may have lacked the opportunity for the court to ever explain the maximum penalty to the defendant at, for example, a guilty plea proceeding). Nor is it similar to the facts confronted

21

by this Court in *Johnson*, 2020 WL 3864945, where the defendant had been previously convicted of felonies, but none of the sentences imposed for those prior convictions exceeded one year.

Here, based upon the state court judgment and the legal requirements under Virginia law, not only was Bryant advised at his plea that his crime of conviction was punishable by a term of imprisonment of more than one year, but he was also *actually* sentenced to three years' imprisonment. Although he served no actual time due to the suspended sentence, there is no reasonable probability that he was unaware that he could have served more than one year of imprisonment. In fact, Bryant does not claim on appeal (nor has he claimed at any time) that these procedures under Virginia law were not followed, or that he was somehow unaware or forgot that he received a suspended sentence of three years' imprisonment on the prior conviction. In short, this evidence is more than sufficient to show that Bryant was aware of his unlawful status at the time he possessed the firearm.

Other circuit courts addressing similar evidence have reached the same conclusion. For example, in *United States v. Huntsberry*, 956 F.3d 270 (5th Cir. 2020), the defendant argued that his guilty plea, to being a felon-in-possession of a

firearm in 2014, should be vacated under *Rehaif* because the prior felony was based upon a juvenile conviction in 2003 for which he received a suspended sentence of two years' imprisonment followed by three years' supervised probation. *Id.* at 285. The Fifth Circuit rejected the *Rehaif* challenge and held that there was "little possibility that [the defendant] was ignorant of his status as a convicted felon," although he had not served any time in prison, because Louisiana law required defendants to be apprised of the maximum possible penalty before accepting a guilty plea. *Id.* From that legal requirement, the court concluded that the defendant "undoubtedly understood that the offense to which he pleaded *nolo contendere* was punishable by more than one year in prison." *Id.*

Similarly, in *United States v. Burghardt*, 939 F.3d 397 (1st Cir. 2019), *cert. denied*, 140 S. Ct. 2550 (2020), the First Circuit held that the defendant's post-*Rehaif* Rule 11 challenge failed because he had twice previously been convicted of crimes in New Hampshire, where judges are required by state law to explain to defendants the potential maximum sentence. *Id.* at 403-04. The court concluded that this legal requirement made it "virtually certain" the defendant was told "face-to-face what his maximum sentence could be."[8] *Id.* at 404; *see also United*

---

[8] Bryant argues that *Burghardt* is distinguishable because the defendant in that case had multiple felony convictions and had served at least a total of two years' imprisonment

*States v. Payne*, 964 F.3d 652, 656 (7th Cir. 2020) (relying in part on the "express statements in the three docket sheets and the common practice in the courts in which [the defendant] was convicted" in holding that the defendant knew of his unlawful status); *United States v. Thomas*, 810 F. App'x 789, 798 (11th Cir. 2020) ("[T]he state court that accepted Thomas's guilty plea was required by Florida law to first ensure that Thomas understood . . . the statutory maximum penalty . . . . [He] does not point to anything in the record to suggest that the state court judge who accepted his guilty plea failed to comply with state law.").

This does not end our analysis, however. We must also consider whether, notwithstanding this proof, Bryant would have insisted, even foolishly, on going to trial based on his belief that the government could not prove his knowledge of his felon status to the jury. *See Dominguez Benitez*, 542 U.S. at 85 ("[I]f it is reasonably probable he would have gone to trial absent the error, it is no matter that the choice may have been foolish."). Although Bryant argues that we "should infer that it is reasonably probable that [he] would not have pleaded guilty to this

with respect to those convictions. However, the First Circuit's decision did not hinge on that fact. Instead, the court noted that the record was unclear as to how much of the two years of prison time was served on each conviction and emphasized that "evidence that he served over a year for a single charge is not necessary to support our conclusion" because there was "ample other evidence" of the defendant's knowledge of his status. *Burghardt*, 939 F.3d at 404 n.4.

offense after *Rehaif*," Bryant Reply Br. at 11, there is insufficient evidence in the record to support such an inference. First, Bryant's suggestion that the government might not be able to admit the Virginia judgment of conviction carries no weight. Bryant does not dispute the accuracy or authenticity of the document, and there is no indication that the government would have any issue admitting that judgment under Rule 803(22) of the Federal Rules of Evidence. Second, as noted *supra*, there is nothing in the record to suggest that Bryant ever raised any issue—with his attorney, with the district court, or with anyone else—about any purported lack of knowledge about his status as a felon at the time he possessed the firearm in August 2016. This fact alone makes this case distinguishable from other cases, such as *Balde*, where "[t]hroughout the proceedings below, the nature of [the defendant's] status was hotly contested" (including at multiple hearings and during his plea colloquy) and he "vigorously argued" that he was legally present in the United States. 943 F.3d at 97.

The final and perhaps most compelling reason why we can be confident that Bryant would not have put the government to the test of proving his knowledge of his prohibited status is based upon the fact that Bryant would have faced other, more serious charges if he had gone to trial. *See, e.g.*, *Burghardt*, 939 F.3d at 405

("The benefit received by the defendant from pleading is often a factor in our analysis of the likelihood that a defendant might have decided not to plead guilty . . . ."). Bryant argues that the government would have had "significant difficulty convincing a jury that [he] knew and remembered he had been convicted of a crime punishable by a term of imprisonment exceeding one year," and, at a minimum, "he would have been in a superior negotiating position because his understanding about his status as a prohibited person would have been in play as a defense." Bryant Reply Br. at 6, 11. Critically, these arguments overlook the fact that Bryant faced a separate and more serious firearm charge in the superseding indictment—namely Count IV, for knowingly possessing a firearm in August 2016 in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A)—which would carry a mandatory consecutive sentence of five years' imprisonment. *See* 18 U.S.C. § 924(c)(1)(A)(i). The *Rehaif* decision would have been of no assistance to Bryant with respect to this related firearms charge. More specifically, other than proving his possession of the firearm in August 2016 (which obviously was the same element and proof contained in the felon-in-possession charge, and was part of Bryant's pre-*Rehaif* plea calculus), the only additional element that the government would have to prove was that his possession of the firearm was in

furtherance of drug trafficking. *See* 18 U.S.C. § 924(c)(1)(A). The proof that the gun possession related to drug trafficking was overwhelming, including, among other things, the following: (1) the shootout in which Bryant was involved on August 26, 2016 took place at the Putney Residence, which was the base of operations for the drug business; (2) shortly after the shootout, Bryant and a second individual left the residence in their vehicles and were stopped by law enforcement; (3) police searched the Putney Residence on August 26, 2016 and seized marijuana, drug paraphernalia (including a crack pipe and scales), and a semi-automatic Ruger .40 caliber firearm, in addition to .40 caliber shell casings recovered outside the Putney Residence; and (4) police were told by one of the targets of the August 26, 2016 shooting (and at least one other eyewitness) that the shooting involved a narcotics debt of $30.[9]

Based upon this evidence, Bryant undoubtedly understood that, if the government could prove he possessed the firearm in August 2016, it also could easily prove the possession related to his drug trafficking on Count IV. Given this

---

[9] We note that the criminal complaint also referenced that a law enforcement officer observed (over a live-feed video, which was recorded) Bryant holding a handgun during a drug transaction with an informant on August 11, 2016, at the Putney Residence. *See* Aff. in Support of Compl. at 3-4, *United States v. Bryant*, 16cr118 (D. Vt. Aug. 17, 2016), ECF No. 24-1. This evidence was also referenced by the government (and confirmed by Bryant) at the guilty plea proceeding. *See* Plea Tr. at 24-25, *Bryant*, 16cr118, ECF No. 382.

additional (more serious) charge and the overlapping proof, even if *Rehaif* had been decided before Bryant's guilty plea, Bryant would have certainly recognized that any potential acquittal on the felon-in-possession charge based on *Rehaif* would have been a Pyrrhic victory. In other words, assuming that the government could not prove his knowledge of his prohibited status and that he was acquitted on the § 922(g) charge, the same proof would have resulted in his conviction on the § 924(c) charge, with a higher penalty (namely, a mandatory five years of imprisonment) that must run consecutively to the other counts of conviction, including the mandatory five-year minimum on the narcotics distribution charge.[10]

Similarly, from the government's standpoint, the § 922(g) charge would not have been an independent focal point in the plea negotiations because a § 922(g) conviction would likely be grouped with the drug distribution conviction under the Guidelines and (as ultimately reflected in the PSR) result in no incremental increase in the total offense level for purposes of sentencing. The government's

---

[10] Moreover, although the superseding indictment did not charge Bryant with discharging a firearm, it is clear that the evidence would have supported such a charge given the conduct on August 26, 2016, and, if the government obtained a superseding indictment before trial adding that charge, Bryant would have faced a 10-year mandatory, consecutive sentence if convicted of the § 924(c) charge. *See* 18 U.S.C. § 924(c)(1)(A)(iii).

willingness to dismiss the § 924(c) charge as part of the plea agreement was an enormous benefit to Bryant, while the felon-in-possession charge would have had little, if any, additional significance to him (or the government) in such negotiations. Thus, in the context of this particular case, it is highly implausible that *Rehaif* could have given Bryant any additional leverage in plea negotiations or would have resulted in him reaching a decision not to plead guilty to the two-count superseding information and, instead, go to trial on the superseding indictment.

In sum, we conclude that, even if the district court had correctly explained the knowledge-of-status element under § 922(g) at the time of Bryant's plea, there is no reasonable probability that he would not have pled guilty to the superseding information, and thus, the error did not affect a substantial right. Accordingly, Bryant's *Rehaif* challenge fails under plain error review.[11]

---

[11] Because the third prong of the plain-error standard is not satisfied, we need not consider the fourth prong of the test. *See Puckett v. United States*, 556 U.S. 129, 135 (2009). In any event, for the same reasons articulated under third prong, we also conclude that the error did not affect "the fairness, integrity or public reputation of judicial proceedings." *Bastian*, 770 F.3d at 219-20.

## B.     Reasonableness of the 90-Month Sentence

Bryant also challenges his 90-month sentence as procedurally and substantively unreasonable.  He argues that his sentence was procedurally unreasonable because the district court "failed to meaningfully consider and compare the co-defendants' relative culpability."  Bryant Br. at 37.  As a result, he claims that the sentence was substantively unreasonable because it was disproportionately severe.

We review a district court's sentencing decisions for reasonableness.  *United States v. Cossey*, 632 F.3d 82, 86 (2d Cir. 2011).  A review of "reasonableness" involves both "an examination of the length of the sentence (substantive reasonableness) as well as the procedure employed in arriving at the sentence (procedural reasonableness)."  *United States v. Johnson*, 567 F.3d 40, 51 (2d Cir. 2009).  "Reasonableness review is akin to a deferential abuse-of-discretion standard."  *Cossey*, 632 F.3d at 86 (quotation marks omitted).  To impose a procedurally reasonable sentence, a district court must "(1) normally determine the applicable Guidelines range, (2) consider the Guidelines along with the other factors under [18 U.S.C.] § 3553(a), and (3) determine whether to impose a Guidelines sentence or a non-Guidelines sentence."  *United States v. Villafuerte*, 502

F.3d 204, 206-07 (2d Cir. 2007). A sentence is substantively unreasonable only when it "cannot be located within the range of permissible decisions," *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc), or, in other words, is "shockingly high, shockingly low, or otherwise unsupportable," *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009).

With respect to procedural reasonableness, Bryant argues that the district court failed to compare Bryant's sentence to those of his co-defendants, which he claims created an unwarranted sentencing disparity. His argument is a nonstarter. We have "repeatedly made clear that section 3553(a)(6) requires a district court to consider *nationwide* sentence disparities, but does not require a district court to consider disparities between co-defendants." *United States v. Ghailani*, 733 F.3d 29, 55 (2d Cir. 2013) (quotation marks omitted) (emphasis added). Given that there is no requirement to consider a disparity with a co-defendant's sentence, there is certainly no procedural error in failing to explain it. *See United States v. Alcius*, 952 F.3d 83, 89 (2d Cir. 2020) ("There is no requirement that a district court consider or explain sentencing disparities among codefendants.").

In any event, the district court did consider Bryant's sentence in the context of co-defendants who had already been sentenced. In fact, at the sentencing, the

district court explicitly noted "at the outset" that it "appreciate[d] that the Court should make efforts at being consistent among various players in the conspiracy," but that there were many other factors to consider as well. App'x at 188-89. The district court then explained that Bryant's role in the conspiracy rendered him dissimilar to his co-defendants:

> Mr. Bryant was . . . the organizer, the boss. He was the person in charge. . . . Other people would play different kinds of roles, but here obviously it's a management increase. He was . . . the major force behind the conspiracy. There's no question about that. So then any comparison to any other individuals becomes really less valuable.

App'x at 189. The district court further explained that Bryant's "use[ of] guns in a very threatening way during the course of the conspiracy" (including waving a gun in someone's face) separated his criminal conduct from that of other co-conspirators. App'x at 190-91. Although Bryant contends that his co-defendant Spellman also discharged his weapon in the gunfight, the district court emphasized that, not only was Bryant involved in the shooting, but also he was involved in other threatening conduct with firearms, and thus, had an additional enhancement for the use of violence:

> One of the differentiating facts, though, is the use of violence. He's got an enhancement for the use of violence. He's got [an] enhancement for the gun. There's all kinds of stories about him waving the guns around to various co-conspirators in a very

threatening way and of course then there's the gun fight. That is just an extraordinarily serious aggravating factor, and when you start to compare him to people in the conspiracy who were sentenced at other times that level of violence is not necessarily present in their situations.

App'x at 179.

Accordingly, contrary to Bryant's assertion that "[t]he district court did not adequately address [his sentencing disparity] arguments," Bryant Br. at 38, it is clear that the district court gave meaningful consideration to those arguments, and decided to reject them based upon other evidence and a discretionary balancing of the sentencing factors. Put simply, there was no procedural error.

Bryant's 90-month term of imprisonment was also substantively reasonable. "[I]n the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006), *abrogated on other grounds by Rita v. United States*, 551 U.S. 338, 364 (2007). Here, even after the district court determined that Bryant should be treated as a criminal history category II (rather than III), his Guidelines advisory range (with the agreed-upon offense level of 33) was still 151 to 188 months' imprisonment—well above the 90-month term of imprisonment that was imposed. In addition, that 90-

33

month sentence was still at the low end of the Guidelines range of 87 to 108 months that the district court ultimately decided was more appropriate after considering and balancing Bryant's mitigating factors.

In short, a sentence of 90 months' imprisonment is far from unreasonably high for a defendant with a criminal record, who was a leader in a drug-trafficking business (involving at least 196 grams of crack cocaine), and was part of a shootout and other threats of gun violence in connection with that conspiracy. Neither the sentences of his co-defendants, nor any of the other mitigating factors articulated at Bryant's sentencing, undermine the substantive reasonableness of the sentence. Accordingly, Bryant's procedural and substantive challenges to the 90-month sentence fail.

## C. Conditions of Supervised Release

Bryant also challenges two of the conditions of supervised release: the risk and communication conditions. This Court generally reviews the imposition of conditions of supervised release for abuse of discretion. *See United States v. Reeves*, 591 F.3d 77, 80 (2d Cir. 2010). "[W]hen a challenge to a condition of supervised release presents an issue of law," however, "we review the imposition of that condition *de novo*, bearing in mind that any error of law necessarily constitutes an

abuse of discretion." *United States v. McLaurin*, 731 F.3d 258, 261 (2d Cir. 2013) (quotation marks omitted).

### 1. Risk Notification Condition

#### a. Judicial Pre-Approval of Notification

At the sentencing, Bryant challenged the risk notification condition, which allowed the probation officer, if he or she determined that the defendant posed a risk to another person, to require the defendant to notify that person of such risk.[12] In response to the objection, the district court noted that it would add a judicial oversight component to that condition. That language, which required prior approval by the district court before any notification was made to another person, was contained in the amended version of this condition that appeared in the addendum to the PSR. The modified version also contained criteria for determining whether a risk requiring notification existed.

---

[12] Condition (*l*), the risk condition, provided:

> If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

Addendum to the PSR at 32.

However, the district court never formally incorporated the amended condition into the written judgment of conviction. On appeal, the government concedes that the risk condition, as modified by the district court pursuant to the addendum to the PSR, governs and that this case should be remanded so that the written judgment may be modified to comport with the district court's oral ruling. We agree. Accordingly, we will remand so that the district court may formally incorporate the amended risk condition into the written judgment.

### b.    Vagueness

Bryant separately argues that the amended risk condition is still unconstitutional because, he asserts, the condition is impermissibly vague. The amended condition states:

> If the probation officer determines, based on your criminal record, *personal history or characteristics*, that you pose a *risk* to another person (including an organization), the probation officer, with the prior approval of the Court, may require you to notify the person about the *risk* and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the *risk*.

Addendum to the PSR at 33 (challenged language emphasized). Particularly, Bryant argues that the condition is vague because, *if* it were to be applied to him, the terms "risks," "characteristics," and "personal history" are all vague.

36

The problem with Bryant's argument is that it begins with "*if.*"  Until a condition of supervised release is imposed, the inquiry remains "an abstraction." *United States v. Traficante*, 966 F.3d 99, 106 (2d Cir. 2020) (rejecting an identical challenge because it, too, was unripe).  The risk condition here is not ripe for review—it is unknown whether the district court will require Bryant to notify anyone about any risks.  *See id.*  Therefore, Bryant's vagueness challenge fails.

### 2.    Communication Condition

As to the communication condition, Bryant contends that the condition is (1) vague, and (2) unreasonable as applied to him because it prohibits him from interacting with his brother, who is also a felon.  That condition reads:

> You must not communicate or interact with someone you know is engaged in criminal activity.  If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

App'x at 200.  We address his two challenges in turn.

### a.    Vagueness

Bryant argues first that the communication condition should be vacated because it is vague and provides undue discretion to the probation officer.  Bryant contends that it is unclear whether the communication condition would be

37

violated by, for example, incidental contacts with other convicted felons, such as by having lunch with coworkers.

Bryant's argument is unpersuasive. We have previously "upheld against a claim of unconstitutional vagueness a condition forbidding association with persons having criminal records." *United States v. Albanese*, 554 F.2d 543, 546 & n.5 (2d Cir. 1977) (citing *Birzon v. King*, 469 F.2d 1241, 1242-43 (2d Cir. 1972)). Bryant's argument that the condition does not properly apprise him of what contacts are allowed is similarly unfounded. The Supreme Court has made clear that "incidental contacts between ex-convicts in the course of work on a legitimate job for a common employer" are exempted from conditions restricting association, *Arciniega v. Freeman*, 404 U.S. 4, 4 (1971); *see also United States v. Doe*, 802 F. App'x 655, 657 (2d Cir. 2020) (rejecting a vagueness challenge to the same communication condition at issue here).

Bryant argues that the Seventh Circuit's decision in *United States v. Kappes*, 782 F.3d 828 (7th Cir. 2015) supports his position. It does not. In *Kappes*, the Seventh Circuit held that a condition, which was very similar to the one at issue in this case, was unconstitutionally vague because it barred defendants from "*associat*[*ing*] with any persons engaged in criminal activity" and "*associat*[*ing*]

with any person convicted of a felony." *Id.* at 848-49 (emphases added). However, the legal defect with that condition was the term "associate," which the Seventh Circuit found vague. *Id.* The Seventh Circuit stated that the condition could be cured by changing "associate" to "*meet, communicate,* or otherwise interact with," *id.* at 849 (emphasis added), which is almost exactly what the condition at issue here says, *see* Addendum to the PSR at 32 (stating that "[y]ou must not *communicate or interact with*" prohibited persons (emphasis added)).

In sum, we see no vagueness in the condition imposed on Bryant. Accordingly, his challenge fails on that ground.

### b. Interacting with an Immediate Family Member

Bryant also argues that the communication condition will bar him from speaking to his brother, who is also a convicted felon. He asserts that the district court did not make the required findings in order to justify imposing a condition that prohibits contact with his brother. We agree.

In *United States v. Myers*, then-Judge Sotomayor held that a condition restricting a father from associating with his child was, without a stronger justification in the record, unreasonable:

> [W]hen a fundamental liberty interest is implicated by a sentencing
> condition, we must first consider the sentencing goal to which the

39

condition relates, and whether the record establishes its reasonableness. We must then consider whether it represents a greater deprivation of liberty than is necessary to achieve that goal. Here, however, the record was inadequate on both prongs of the inquiry, allowing us neither to identify the goal to which the condition related nor to determine whether an undue deprivation of liberty occurred.

426 F.3d 117, 126 (2d Cir. 2005). The government argues that *Myers* is distinguishable because that case involved a parent-child relationship, whereas here the relationship is fraternal. However, we have recognized that sibling relationships are entitled to the same level of due process protection as other familial relationships. *See Gorman v. Rensselaer County*, 910 F.3d 40, 47 (2d Cir. 2018).

Although it would be permissible in certain circumstances to restrict contact on supervised release between a defendant and an immediate family member if a sufficient showing for such a restriction is made, here the district court made no findings and provided little explanation of why this condition was appropriate. When the issue was raised below, the district court responded that "[p]robation officers just generally allow [brothers to talk]" and, if "there's a particular conflict between members of a family and the probation officer thinks that would create a

pretty grave risk if there is contact between the two," the probation officer should be able to prevent the brothers from communicating. App'x at 172-73.

We recognize that a district court need not explain its reasoning when imposing standard conditions, *United States v. Truscello*, 168 F.3d 61, 63 (2d Cir. 1999), which the communication condition at issue here is, *see* App'x at 200. However, because this condition as applied to Bryant implicates a protected familial relationship, *see Gorman*, 910 F.3d at 47, a more thorough justification is required, *see Myers*, 426 F.3d at 125-28 (remanding for further development of the record). The district court's comments, as well as the PSR's generic justifications for the application of this condition, are not commensurate with the burden imposed, and are thus insufficient to support the restriction of Bryant's communications and interactions with his brother. Moreover, because a restriction regarding communications and interactions with an immediate family member implicates a liberty interest, that determination is not a minor detail that can be left to the discretion of the Probation Department. *See United States v. Matta*, 777 F.3d 116, 122 (2d Cir. 2015) (holding that, although a district court "may delegate to a probation officer decisionmaking authority over certain minor details of supervised release," it "may not delegate to the Probation Department

41

decisionmaking authority which would make a defendant's liberty itself contingent on a probation officer's exercise of discretion"); *see also Myers*, 426 F.3d at 130 ("[T]he district court may not improperly *delegate* this determination [of whether a special condition is warranted] to the probation office.").

Accordingly, we will remand to allow the district court to provide further justification for this condition as applied to Bryant's immediate family members or to exempt such communications and interactions from the restriction.

## III.    CONCLUSION

For the reasons set forth above, we AFFIRM Bryant's conviction and sentence, except we VACATE the judgment as to the two challenged conditions of supervised release, and REMAND in that respect only for further proceedings consistent with this opinion.