**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-4819

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ANTWAN HEYWARD,

Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Charleston. David C. Norton, District Judge. (2:16-cr-00940-DCN-1)

Argued: May 4, 2022                    Decided: August 3, 2022

Before KING, AGEE, and HEYTENS, Circuit Judges.

Vacated and remanded by published opinion. Judge Heytens wrote the opinion, in which Judge King joined. Judge Agee wrote a dissenting opinion.

**ARGUED:** Emily Deck Harrill, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellant. Kathleen Michelle Stoughton, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee. **ON BRIEF:** Sherri A. Lydon, United States Attorney, Florence, South Carolina, Corey F. Ellis, United States Attorney, Columbia, South Carolina, Nathan Williams, Assistant United States Attorney, Sean Kittrell, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee.

TOBY HEYTENS, Circuit Judge:

Antwan Heyward pleaded guilty to "knowingly" possessing a firearm after being convicted of "a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. §§ 922(g)(1), 924(a)(2). Two years later, the Supreme Court held that "the word 'knowingly' applies both to the defendant's conduct *and* to the defendant's status." *Rehaif v. United States*, 139 S. Ct. 2191, 2194 (2019) (emphasis added). Heyward was not advised of the second knowledge requirement before pleading guilty, and his lawyer made no objection to that omission. Because Heyward is the rare defendant who can make the "difficult" showing that, had he been properly advised, "there is a reasonable probability that he would not have pled guilty," *Greer v. United States*, 141 S. Ct. 2090, 2097 (2021) (quotation marks omitted), we vacate his conviction and remand for further proceedings.

I.

In 2014, Heyward was arrested after he fired two shots from the front porch of the house where he resided, killing a person in a car parked outside. Heyward was initially charged in South Carolina state court with murder and possession of a weapon during the commission of a crime. Before that case went to trial, however, federal authorities charged Heyward with various firearms and narcotics offenses and the state charges were dropped.

In 2017, Heyward pleaded guilty in federal court to one count of violating 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Consistent with then-controlling precedent from this Court, Heyward was not advised that, at trial, the government would have to prove beyond a reasonable doubt that he knew of his felon status when he possessed the firearm. See *United States v. Langley*, 62 F.3d 602, 604–07 (4th Cir. 1995) (en banc) (specifically rejecting

2

such a requirement). The district court accepted Heyward's plea and sentenced him to 120 months of imprisonment, the statutory maximum. 18 U.S.C. § 924(a)(2).

Heyward appealed, initially challenging only his sentence.[1] After briefing was complete, the Supreme Court decided *Rehaif*, which abrogated this Court's holding in *Langley*. See *Greer*, 141 S. Ct. at 2095 ("after *Rehaif*, the Government must prove not only that the defendant knew he possessed a firearm, but also that *he knew he was a felon* when he possessed the firearm"). The parties filed supplemental briefs addressing how *Rehaif* impacts this case.

## II.

Two points of common ground frame our inquiry. First, everyone agrees that, given *Rehaif*, the district court erred in failing to advise Heyward that he could not be guilty unless he knew—at the time he possessed the firearm—that he previously had been convicted of "a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). Second, everyone agrees that neither Heyward nor his counsel objected to this omission at the time of the guilty plea.

Although one could question whether it makes sense to treat defendants in radically different ways based on whether their lawyers made objections that would have been flatly inconsistent with then-controlling authority,[2] the Supreme Court has repeatedly directed

---

[1] Because we vacate Heyward's conviction, we need not address whether the district court erred in sentencing him.

[2] See generally Toby J. Heytens, *Managing Transitional Moments in Criminal Cases*, 115 Yale L.J. 922, 941–69 (2006).

that we do just that. See, *e.g.*, *Greer*, 141 S. Ct. at 2099; *United States v. Cotton*, 535 U.S. 625, 631 (2002); *Johnson v. United States*, 520 U.S. 461, 465–67 (1997). So, because the *Rehaif* error in this case was not "brought to the [district court's] attention," we review only for "plain error." Fed. R. Crim. P. 52(b); see *Greer*, 141 S. Ct. at 2096. Under that standard, Heyward may not obtain relief unless: (a) the error was "plain"; (b) the error affected "substantial rights," meaning that there is "a reasonable probability that, but for the error, the outcome of the proceeding would have been different"; and (c) "the error had a serious effect on the fairness, integrity or public reputation of judicial proceedings." *Id.* at 2096–97 (quotation marks omitted). This standard is "difficult" to satisfy. *Puckett v. United States*, 556 U.S. 129, 135 (2009).

### A.

Beyond conceding error, the government also concedes the plainness point. To those unfamiliar with the twists and turns of plain error doctrine, that may seem odd. After all, at the time of the plea colloquy, this Court had specifically held that the government need *not* prove that defendants like Heyward knew of their felony status when they possessed the firearm in question. See *Langley*, 62 F.3d at 604–07. For that reason, one might wonder how the district court committed "clear" or "obvious" error in accepting Heyward's plea. *United States v. Olano*, 507 U.S. 725, 734 (1993) (quotation marks omitted). But, here too, well-settled Supreme Court authority provides the answer, holding that—regardless of "whether a legal question was settled or unsettled at the time" of the trial court proceedings—"it is enough that an error be 'plain' at the time of appellate consideration." *Henderson v. United States*, 568 U.S. 266, 279 (2013) (quotation marks omitted). And

4

because it is *now* clear that the government must prove that a defendant "knew he was a felon when he possessed the firearm," *Greer*, 141 S. Ct. at 2095 (emphasis omitted), we conclude the district court plainly erred in not advising Heyward of that requirement before accepting his guilty plea.

B.

That brings us to the next requirement: whether the error affected Heyward's "substantial rights." *Greer*, 141 S. Ct. at 2096. Heyward bears the burden of proof on this requirement and "faces an uphill climb in trying to satisfy" it. *Id.* at 2097. The reason is straightforward: "If a person is a felon, he ordinarily knows he is a felon" because "[f]elony status is simply not the kind of thing that one forgets." *Id.* (quotation marks omitted).

At the same time, however, the Supreme Court has emphasized that "there may be cases in which a defendant who is a felon can make an adequate showing on appeal that he would have presented evidence in the district court that he did not in fact know he was a felon when he possessed firearms." *Greer*, 141 S. Ct. at 2097; see *id.* (noting the government had "conceded" at oral argument "that there are circumstances in which a defendant might make such a showing"). In *Rehaif*, for example, the Court specifically referenced "a person who was . . . sentenced only to probation" and "who does not know that the crime is *punishable* by imprisonment for a term exceeding one year." 139 S. Ct. at 2197–98 (quotation marks omitted); accord *United States v. Caldwell*, 7 F.4th 191, 213 (4th Cir. 2021) (noting that "[s]uch a defendant may not have been aware of what punishments were *permitted* for his prior conviction, and thus that he was considered a felon under § 922(g)(1)"). Alternatively, "a defendant may not understand that . . . a

5

misdemeanor under state law can be a felony for purposes of federal law." *Greer*, 141 S. Ct. at 2103 (Sotomayor, J., concurring in part).

The nature of the substantial rights inquiry also differs depending on the context in which the error occurred. To be eligible for relief based on a "*Rehaif* error in the jury instructions," a defendant must demonstrate "a reasonable probability that a jury would have acquitted him." *Greer*, 141 S. Ct. at 2098. But because the decision whether to plead guilty always belongs to the defendant, see, *e.g.*, *Florida v. Nixon*, 543 U.S. 175, 187 (2004), to obtain relief for a "*Rehaif* error during [a] plea colloquy," a defendant must demonstrate "a reasonable probability that"—had he been correctly advised—"he would have gone to trial rather than plead guilty," *Greer*, 141 S. Ct. at 2098, without taking on the added burden of establishing that he probably would have been acquitted at trial.

Heyward's burden to show only a reasonable probability that he would have gone to trial distinguishes his situation from our post-*Greer* decisions denying relief to defendants whose *Rehaif* claims arose from jury instructions. In *United States v. Caldwell*, 7 F.4th 191 (4th Cir. 2021), this Court concluded that a defendant who had been found guilty by a jury in a felon-in-possession case could not show that a *Rehaif* error had affected his substantial rights because the fact that the defendant "had, on several occasions, served sentences longer than a year—including two stints of more than five years each in federal prison—ma[de] it virtually impossible to believe he did not know he had been convicted of crimes punishable by such sentences." *Id.* at 213. And our decision in *United States v. Moody*, 2 F.4th 180 (4th Cir. 2021), is even further afield because that case did not address the substantial rights prong at all. Instead, Moody's *Rehaif* claim failed because he asserted

6

a classic (and classically flawed) mistake-of-law defense, insisting that the government should have been required to prove not only that he understood the nature of his previous conviction but *also* that he knew his conviction had made it illegal for him to possess a firearm. *Id.* at 197–98. Here, in contrast, the question is not what *a jury* should have been told or what it could have concluded based on the evidence. Instead, it is whether—absent the *Rehaif* error—there is a reasonable probability that *Heyward* would have made a different decision about whether to plead guilty. See *Greer*, 141 S. Ct. at 2097 (specifically drawing this distinction).

Of course, common sense dictates that "[a] defendant considering whether to plead guilty would recognize" jurors' tendency to "find that a defendant *knew* he was a felon based on the fact that he *was* a felon" and "likely factor that reality into the decision to plead guilty." *Greer*, 141 S. Ct. at 2097. That is why, in assessing whether a defendant "adequately demonstrated a reasonable probability that he would have rejected [a] plea," courts are rightly skeptical of post hoc claims and place greater emphasis on "contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017). Because a defendant's decision whether to plead guilty "may not turn solely on the likelihood of conviction," however, a "defendant need not show that going to trial would have been the best objective strategy or even an attractive option; he need only show a reasonable likelihood that a person in [his] shoes would have chosen to go to trial." *United States v. Akande*, 956 F.3d 257, 264 (4th Cir. 2020) (alteration in original) (quotation marks omitted).

7

We conclude this is the rare case where a defendant has satisfied his burden of showing that, had the district court "correctly advised him of the *mens rea* element of the offense, there is a 'reasonable probability' that he would not have pled guilty." *Greer*, 141 S. Ct. at 2097. Examining "the *entire* record," *id.* at 2098, we see that Heyward repeatedly insisted that he had not known of the relevant fact—that is, his status as a felon—that made it unlawful for him to possess a firearm.[3]

---

[3] We decline to consider the government's "Supplemental Joint Appendix," which consists of four documents not contained in the district court record. Federal Rule of Appellate Procedure 10(a) defines the "record on appeal" as "(1) the original papers and exhibits filed in the district court; (2) the transcript of proceedings, if any; and (3) a certified copy of the docket entries prepared by the district clerk." And although Rule 10(e) permits filing "a supplemental record" in certain limited circumstances, none applies here. The new material was not filed "on stipulation of the parties," Rule 10(e)(2)(A), nor was it added to the record "by the district court," Rule 10(e)(2)(B). Nor was the material "omitted from or misstated in the record by error or accident," Rule 10(e)(2)—indeed, some of it was not even *created* until years after the district court proceedings.

Rule 10(e) "does not grant a license to build a new record" on appeal, *United States v. Kennedy*, 225 F.3d 1187, 1191 (10th Cir. 2000) (quotation marks omitted), and we decline to exercise any "inherent equitable authority to supplement the record on appeal" we may have beyond the scope of that rule, *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1012 (6th Cir. 2003). Although our sister circuits have sometimes permitted the government to supplement the record with judicially noticeable documents that existed at the time of the conviction, see *United States v. Lara*, 970 F.3d 68, 88 (1st Cir. 2020); *United States v. Brandon*, 965 F.3d 427, 432 n.2 (5th Cir. 2020); *United States v. Miller*, 954 F.3d 551, 559–60 (2d Cir. 2020), that is a far cry from seeking to add an affidavit created long after Heyward's conviction and even after he filed his opening supplemental brief on appeal. We thus resolve this case based solely on the record before the district court and vacate our earlier single-judge order to the extent it conflicts with this decision. See Fed. R. App. P. 27(c) ("The court may review the action of a single judge."); *TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1157 n.5 (Fed. Cir. 2004) (stating that, under Rule 27(c), a panel is "not bound to follow" an earlier order by a single judge); *McCoy v. Michigan*, 369 Fed. Appx. 646, 653 n.3 (6th Cir. 2010) ("a single-judge order does not invoke the law-of-the-case doctrine").

The first occasion was during a hearing on the ultimately dismissed state charges, a transcript of which was made part of the district court record during sentencing. At that hearing, the state prosecutor asked Heyward if he was "legally allowed to have a gun." Sealed JA (SJA) 266.[4] Heyward responded that he had "owned a gun before in [his] name, ma'am, yes," and that he was "*not a felon right now*, so [he could] get one." *Id.* (emphasis added). After the government followed up, "Isn't it true that you were convicted of possession of cocaine and unlawful carrying of a pistol in the past," Heyward responded, "Yeah, but I pleaded to a misdemeanor and *got six month probation*." SJA 266–67 (emphasis added). Pressing on, the prosecutor asserted that Heyward's prior drug conviction "carries over a year" and asked, "so federally you are not allowed to possess a gun; correct?" SJA 267. At that point, Heyward said: "I guess so. It says on my gun act I pleaded to a misdemeanor and I cannot possess ammunition. But it didn't say I can't own a firearm." *Id*.

The second instance occurred during the change of plea hearing before the district court. After reciting the factual basis for Heyward's plea, the government stated: "I'll tell the Court also that at the time this incident occurred, as I mentioned earlier, he was a convicted felon." JA 25. The district court asked Heyward if he "agree[d] with the prosecutor's summary of the—that you were [a] convicted felon on July 18th and 19th, 2014, and at that time you had this .357 magnum in your possession?" JA 25–26. Heyward

---

[4] All quotations included in this opinion from the sealed joint appendix were discussed by the parties in their unsealed supplemental briefs and at oral argument.

9

did not immediately respond, stating "I would like to refer that question to my attorney." JA 26. "After that consultation," U.S. Supp. Br. 6, defense counsel directed Heyward to answer the question, and Heyward said, "Yes." JA 26.

A third example appears in a letter Heyward wrote the district court in connection with his sentencing. In that letter, Heyward stated: "*I didn[']t have any felon[ies]* in the state only 3 [misdemeanors]. *I did get 6 months probation* when I was 21 years old in 2006 for unlawful carry of a gun that was register[ed] to me in my name with simple poss[ession] of [cocaine] which made me a prohibited person to have a gun but other than that my record is clean." SJA 435 (emphasis added).

Taken together, these examples paint a consistent picture. In response to leading questions by a prosecutor and advice from his lawyer, Heyward acknowledged that he had not—in reality—been allowed to possess a firearm at the time of the underlying incident. But Heyward persistently denied having known at the time he possessed the firearm that his previous conviction had the characteristics necessary to trigger the felon-in-possession statute, repeatedly noting that he had been convicted of a misdemeanor for which he had received a six-month sentence. SJA 266–67, 435.

A comparison to the companion case the Supreme Court decided along with *Greer* clinches the point. Like Heyward, Michael Gary pleaded guilty to a felon-in-possession offense without being advised of the knowledge requirement later announced in *Rehaif*. See 141 S. Ct. at 2096. Like Heyward, Gary had not "disputed the fact of [his] prior conviction[]" and had "admitted that he was a felon when he pled guilty." *Id.* at 2098. But the Supreme Court did not treat those two facts as dispositive. Instead, the Court also

specifically deemed it "[i]mportant[]" that—even "on appeal"—Gary had not "argued or made a representation that" he would have presented evidence that he had "not in fact know[n]" he was a "felon[] when [he] possessed [the] firearm[.]" *Id*. Heyward, in contrast, goes even further by maintaining that the *existing record* suggests he had not known of the facts that made it unlawful for him to possess a firearm at the relevant time.

The government insists that the exchanges recounted above demonstrate that Heyward had the requisite knowledge. But none of the exchanges squarely confronts precisely what the government would have been required to prove at a trial conducted in accordance with *Rehaif*. It is common to describe 18 U.S.C. § 922(g)(1) as the "felon-in-possession" statute, and, in *Greer*, the Supreme Court repeatedly shorthanded the statute's second knowledge requirement as whether the defendant "*knew he was a felon* when he possessed the firearm," 141 S. Ct. at 2095; accord *id.* at 2096, 2100 (similar). The word "felon," however, lacks some precision: What the statutory text forbids is possessing a firearm after having been convicted of "a crime punishable by imprisonment for a term exceeding one year," 18 U.S.C. § 922(g)(1), and even that is an overly broad shorthand for what the statute actually forbids. See § 921(a)(20) (excluding from the definition of "crime punishable by imprisonment for a term exceeding one year" "any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices" and "any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less"). For that reason, had this case gone to trial, the government would have

11

needed to prove that Heyward knew, when he possessed the firearm, that his prior state conviction was punishable by more than two years of imprisonment.[5]

The nature of this knowledge requirement explains why the government's reliance on Heyward's testimony in state court about a "gun act" form fails. SJA 267. The question under *Rehaif* is whether Heyward knew "he belonged to the relevant category of persons," 139 S. Ct. at 2200, not whether he knew the "legal consequences" of his conviction, *Moody*, 2 F.4th at 198. (And even if Heyward's understanding of the legal consequences of his conviction mattered, Heyward testified that the form in question said he "cannot possess ammunition," but "*didn't say* [he] can't own a firearm." SJA 267 (emphasis added).)

Another misstep involves timing—specifically, *when* Heyward must have understood the nature of his previous conviction. The government focuses heavily on an exchange during the state court hearing where Heyward responded "I guess so" after the prosecutor asserted that his previous drug conviction "carrie[d] over a year" and asked, "so federally you are not allowed to possess a gun; correct?" SJA 267. But the relevant inquiry

---

[5] Regardless of its mild imprecision, the Supreme Court has, in practice, repeatedly used the term "felon" to describe the status that § 922(g)(1) requires defendants to know. See, *e.g.*, *Greer*, 141 S. Ct. at 2097 (stating that one way to "satisfy the substantial-rights prong of the plain-error test" is for the defendant to argue that he "did not know he was a felon"). Following the Supreme Court's lead, Heyward's supplemental briefing generally frames the issue as whether Heyward "knew he was a *felon*" rather than whether he knew he had been convicted of a crime punishable by more than one year of imprisonment (as that term is defined in the statute). See, *e.g.*, Heyward Supp. Br. 1 (emphasis altered); Heyward Supp. Reply Br. 10 ("Heyward did not understand, at the time he possessed the weapon, that his prior state misdemeanor conviction could qualify as a felony for purposes of federal law."). Heyward's use of this shorthand tracks and often quotes directly from *Greer*, and the government has never argued that it represents any sort of additional waiver or forfeiture on Heyward's part. See Oral Arg. 21:00–21:06.

is not what Heyward knew by the time of *the hearing*—it is what he knew at the time of *the offense*. See *Greer*, 141 S. Ct. at 2095 (defendant must have known "*he was a felon* when he possessed the firearm"). Neither the government's question nor Heyward's answer focuses on that last issue, a fact that seems especially notable given that Heyward had—just moments before—insisted he was, in fact, "not a felon right now." SJA 266.

The same problem plagues the government's reliance on Heyward's statements during his change-of-plea hearing and in the letter he wrote the district court (again, all of which predated *Rehaif*). Although Heyward ultimately admitted both times that he had a qualifying prior conviction, neither statement addressed whether Heyward had the relevant knowledge at the time of the underlying incident. And in his briefing before us, Heyward asserts that he wrote the letter after "repeatedly" being "told he had a qualifying felony conviction for purposes of § 922(g)(1)," whereas the overarching point of the letter was to stress that he had believed at the time that he did not have any such convictions. Heyward Supp. Reply Br. 8.

The circumstances of Heyward's prior convictions lend further strength to his argument that he did not know at the critical time that the crimes were "'*punishable* by imprisonment for a term exceeding one year.'" *Rehaif*, 139 S. Ct. at 2198 (quoting 18 U.S.C. § 922(g)(1)). For the qualifying conviction, Heyward received a suspended sentence of exactly one year and was ordered to serve "only [six months'] probation." *Id.*; see SJA 418. In addition, *all* of Heyward's prior convictions were "misdemeanor[s] under state law." *Greer*, 141 S. Ct. at 2103 (Sotomayor, J., concurring in part).

All of this tends to show that Heyward would have been able to mount a potentially credible argument at trial that he lacked the necessary knowledge to be convicted. And there is also evidence that Heyward's contemporaneous preference would have been to hold the government to its burden. Heyward hesitated during the plea colloquy when asked about the critical element, and shortly thereafter wrote a letter to the district court further attempting to clarify exactly what he knew and when. These events, combined with Heyward's consistent denial that he knew of his status in 2014, establish there is at least "a 'reasonable probability' that he would not have pled guilty" had the district court "correctly advised him of the *mens rea* element of the offense." *Greer*, 141 S. Ct. at 2097.[6]

---

[6] Our view is not altered by the out-of-circuit authorities cited for the first time by the government at oral argument and later in a post-argument letter. For one thing, none of those decisions relied solely on the fact that state law would have required the state court to advise the defendant of the maximum potential penalty for the underlying conviction. To the contrary, each decision also cited other critical evidence that undermined the plausibility of any claim that the defendant did not know the underlying crime was punishable by more than a year—for example, a presentence report indicating the defendant had actually *served* more than a year in prison or judgments indicating the defendant had actually *received* a suspended sentence of more than a year. See *United States v. Bryant*, 976 F.3d 165, 175–76 (2d Cir. 2020); *United States v. Huntsberry*, 956 F.3d 270, 285–86 (5th Cir. 2020); *United States v. Burghardt*, 939 F.3d 397, 404 (1st Cir. 2019). In addition, all of the decisions cited by the government pre-date not only the oral argument in this case but also the parties' briefs addressing the *Rehaif* error. See *United States v. Venable*, 943 F.3d 187, 192 n.7 (4th Cir. 2019) (emphasizing that the proper use of letters filed under Federal Rule of Appellate Procedure 28(j) is to alert the court to new authority that has "come to a party's attention *after* briefing or oral argument" (citation omitted and emphasis added)); *United States v. Ashford*, 718 F.3d 377, 381 (4th Cir. 2013) (emphasizing that litigants may not use post-argument letters "as a means to advance new arguments couched as supplemental authorities").

C.

Heyward also has met his burden to establish the final requirement—that "the error had a serious effect on the fairness, integrity or public reputation of judicial proceedings." *Greer*, 141 S. Ct. at 2096–97 (quotation marks omitted). "A plea of guilty is more than a confession which admits that the accused did various acts; it *is itself* a conviction[.]" *Boykin v. Alabama*, 395 U.S. 238, 242 (1969) (emphasis added). When courts accept guilty pleas, they permit defendants to waive numerous constitutional rights and enter a conviction because the plea "serves as a stipulation that no proof by the prosecution need be advanced," thus "ending [the] controversy." *Id.* at 242 n.4 (quotation marks omitted). With such significant consequences at stake, the integrity and public reputation of convictions obtained via guilty pleas rest in significant measure on the fact that the defendant was fully informed before entering the plea. See *id.* at 243–44.

Because of the *Rehaif* error, however, Heyward offered the relevant stipulation after having been misinformed about a material aspect of the offense to which he was pleading guilty. That much, of course, is true of all *Rehaif* errors in plea colloquies. We emphasize that such errors are "not structural" and that the omission of a single element from a plea colloquy does not "necessarily render" the proceedings fundamentally unfair. *Greer*, 141 S. Ct. at 2100 (emphasis omitted). Instead, the final plain error requirement "is meant to be applied on a case-specific and fact-intensive basis." *Puckett*, 556 U.S. at 142.

That is what we do here. Based on all the facts and circumstances of this case, we conclude it is appropriate to exercise our discretion to correct this particular *Rehaif* error. That error resulted in Heyward unknowingly agreeing that the government need not

15

advance proof of the knowledge-of-status element, notwithstanding his persistent and contemporaneous assertions that he *had not known* of his legal status at the relevant time. Because these circumstances raise obvious—and troubling—questions about whether Heyward would have so agreed had he been fully and correctly informed, allowing the current plea to stand without further inquiry would seriously affect the fairness, integrity, and public reputation of judicial proceedings.

*     *     *

"Satisfying all four prongs of the plain-error test is difficult," and the ultimate decision to grant relief is always discretionary. *Greer*, 141 S. Ct. at 2096–97 (quotation marks omitted). But this case is far from ordinary and the evidence in this record is sufficient to warrant relief even under plain error review. Accordingly, we vacate Heyward's conviction and remand to the district court for further proceedings consistent with this opinion.

*VACATED AND REMANDED*

AGEE, Circuit Judge, dissenting:

The majority correctly identifies the principles governing Heyward's claim of plain error based on *Rehaif v. United States*, 139 S. Ct. 2191 (2019). Heyward has the burden to prove that "there is a reasonable probability that," absent the district court's plain error, "he would have gone to trial rather than plead guilty." *Greer v. United States*, 141 S. Ct. 2090, 2098 (2021). To meet that burden, he must proffer evidence showing that he did not know his prior South Carolina conviction was "*punishable*" by the requisite term of imprisonment. *Rehaif*, 139 S. Ct. at 2198 (quoting 18 U.S.C. § 922(g)(1)). He "faces an uphill climb in trying to" do so, *Greer*, 141 S. Ct. at 2097, because establishing entitlement to plain-error relief "is difficult, as it should be," *Puckett v. United States*, 556 U.S. 129, 135 (2009) (citation and internal quotation marks omitted).

Under the record in this case, Heyward has failed to meet his burden and is not entitled to plain-error relief. After conferring with counsel during his Rule 11 colloquy, he *admitted* he was "[a] convicted felon" for purposes of § 922(g)(1) at the time of his offense. J.A. 25–26. And after his guilty plea, Heyward wrote a letter to the district court in which he *admitted* that his prior conviction "made [him] a prohibited person to have a gun." Sealed J.A. 435. Yet the majority relieves Heyward of his burden of proof and sets aside these straightforward admissions through strained interpretations of inapposite record evidence. This is the plain error in this case.

But the majority goes further. This Court already permitted the Government to supplement the record on appeal with additional evidence relevant to Heyward's *Rehaif* claim—evidence which only confirms that Heyward cannot meet his burden. Undeterred,

17

the majority vacates this ruling in a footnote and categorically refuses to consider any of the Government's supplemental record evidence. Majority Op. 8 n.3 (citation omitted). That ad hoc decision sets us apart from all other circuits to have addressed this issue, which permit the Government to supplement the record on appeal when presented with a *Rehaif* claim on plain-error review.

I therefore respectfully dissent. This is not the "rare" case where *Rehaif* relief is established on plain-error review. *Est. of Larkins ex rel. Larkins v. Farrell Lines, Inc.*, 806 F.2d 510, 514 (4th Cir. 1986).

I.

A.

On July 18, 2014, Heyward spent the night, in his words, "getting high" on marijuana and cocaine at a friend's house. Sealed J.A. 248. During the early morning hours that followed on July 19, Heyward fired several shots from a .357 revolver toward a vehicle that had recently parked in the residence's driveway, killing the driver, Collette Warren. Heyward was charged with Warren's murder in South Carolina state court. Those charges were later dropped and Federal authorities picked up where the State left off.

A federal grand jury indicted Heyward for two violations of federal law: possession with the intent to distribute cocaine, *see* 21 U.S.C. § 841(a)(1) and (b)(1)(C); and being a felon in possession of a firearm, *see* 18 U.S.C. § 922(g)(1). Previously, in 2006, Heyward had pled guilty in South Carolina state court to one count of cocaine possession. Because that was his first such offense, it was classified as a misdemeanor under South Carolina

18

law but punishable by up to three years' imprisonment. S.C. Code Ann. § 44-53-370(d)(3).[1]

Heyward received a suspended one-year sentence of imprisonment and six months of probation. This conviction was the basis for Heyward's § 922(g)(1) charge.

Initially, Heyward pleaded not guilty to the charges in the federal indictment and was appointed counsel. He then changed his plea to guilty on the § 922(g)(1) offense but without the benefit of a written plea agreement. The Government then moved to dismiss the narcotics offense. During the ensuing Rule 11 colloquy, the Government twice represented, without contradiction, that Heyward was a "convicted felon" under § 922(g)(1). First, in preliminary discussions about the Guidelines range, the Government informed the district court that Heyward "is a convicted felon, but he is not an armed career criminal." J.A. 21. Minutes later, when providing the court with the factual basis to support Heyward's plea, the Government stated, "I'll tell the Court also that at the time this incident occurred, as I mentioned earlier, [Heyward] was a convicted felon." J.A. 25. The district court then immediately interjected:

> THE COURT:    Mr. Heyward, do you agree with the prosecutor's summary of the—*that you were [a] convicted felon on July 18th and 19th, 2014,* and at that time you had this .357 magnum in your possession?
>
> [HEYWARD]:    I would like to refer that question to my attorney.
>
> [COUNSEL]:    Answer the questions.
>
> [HEYWARD]:    *Yes.*

---

[1] Section 44-53-370(d)(3)'s language is the same now as it was when Heyward pleaded guilty in 2006. *Compare with* 2005 S.C. Act 127, § 4 (reflecting the language of section 44-53-370(d)(3) in effect at the time of Heyward's 2006 conviction).

J.A. 25–26 (emphases added). The district court accordingly accepted Heyward's plea.

Just as Heyward admitted during his plea hearing, the Presentence Report ("PSR") stated that "[a] review of Heyward's criminal history confirmed his status as a convicted felon." Sealed J.A. 418. Heyward filed only one objection to the PSR,[2] arguing there was an erroneous cross-reference to the Guideline for second-degree murder in calculating his total offense level. *See generally* U.S.S.G. § 2K2.1(c)(1)(B) (2016) (directing courts to cross-reference "the most analogous offense guideline from Chapter Two, Part A, Subpart 1 (Homicide)" if death results from a firearm possession offense). Instead, Heyward posited that voluntary manslaughter was the more appropriate Guideline cross-reference. This cross-reference dispute was the parties' sole focus at sentencing.

The district court held a hearing on Heyward's objection, but the parties produced no live witnesses. Instead, they agreed to submit only a transcript of a 2014 state court hearing after the State first charged Heyward with Warren's murder ("the *Duncan* hearing"[3]) and the state court judge's attendant written ruling.

---

[2] Heyward initially filed additional objections, but those were all "accommodated in the revised [PSR] to defense counsel's satisfaction." Sealed J.A. 411.

[3] One of the defenses Heyward raised against the state murder charge was that the shooting was justified under South Carolina's "stand your ground" law, S.C. Code Ann. § 16-11-410 to 450. In *State v. Duncan*, the Supreme Court of South Carolina held that because this law provides "immunity" from prosecution, trial courts must hold a pretrial hearing to determine its application when a defendant asserts it. 709 S.E.2d 662, 664–65 (S.C. 2011).

20

Much of the *Duncan* hearing transcript is irrelevant to Heyward's instant *Rehaif* claim, except for an exchange between the Assistant Solicitor and Heyward about how he came into possession of the firearm he used to shoot Warren:

[STATE]:        . . . So how did you get this gun?

[HEYWARD]:  It was a gift from Mr. Foreman.

. . .

[STATE]:        Are you legally allowed to have a gun? Have you been convicted of anything—

[HEYWARD]:  I already—I have owned a gun before in my name, ma'am, yes.

[STATE]:        Okay.

[HEYWARD]:  And I am not a felon right now, so I can get one.

[STATE]:        Isn't it true that you were convicted of possession of cocaine and unlawful carrying of a pistol in the past?

[HEYWARD]:  Yeah, but I pleaded to a misdemeanor and got six month [sic] probation.

[STATE]:        *But you have been convicted of possession of cocaine which is—carries over a year, so federally you are not allowed to possess a gun;* correct?

[HEYWARD]:  *I guess so.* It says on my gun act I pleaded to a misdemeanor and I cannot possess ammunition. But it didn't say I can't own a firearm.

Sealed J.A. 266–67 (emphases added).

The district court eventually overruled Heyward's cross-reference objection. After that decision, but before sentencing, Heyward sent the district court a letter "asking . . . for mercy," Sealed J.A. 435, and purporting to clarify some factual matters that came up at the hearing on his objection to the court's decision to use a "cross reference to 2nd degree

21

murder," Sealed J.A. 432. Relevant here, Heyward addressed his prior conviction and ability to possess a firearm:

> Your Honor I plead [sic] guilty to the charge of 922G which is 0-10 years[.] I didn[']t have any feloneys [sic] in the state only 3 [misdemeanors.] I did get 6 months['] probation when I was 21 years old in 2006 for unlawful carry of a gun that was register[e]d to me in my name with simple poss[ession] of [cocaine] *which made me a prohibited person to have a gun* but other than that my [r]ecord is clean.

*Id.* (emphasis added).

Ultimately, the district court sentenced him to 120 months' imprisonment, the Guidelines range for his offense. Heyward timely noted an appeal.

### B.

On appeal, Heyward initially argued only that the district court erroneously cross-referenced the Guideline for second-degree murder in calculating his total offense level. But while his appeal was pending, the Supreme Court decided *Rehaif*. A panel of this Court granted his motion for leave to file supplemental briefing so he could assert a *Rehaif* claim, but his case was held in abeyance for nearly two years while we considered other potentially dispositive post-*Rehaif* appeals.

Before filing a supplemental response brief, the Government moved to supplement the record with four items of evidence totaling sixteen pages in a supplemental joint appendix. Typically, the record on appeal is limited to that which the parties developed before the district court. *See* Fed. R. App. P. 10(a). But in limited circumstances, such as when "anything material to either party is omitted from . . . the record by error or accident," this Court may permit supplementation of the record. *Id.* R. 10(e)(2)(C). Citing Rule 10(e)

22

and *Greer*, the Government argued that supplementation was necessary because "neither the parties nor the district court were aware that it was error to omit the knowledge-of-status element" during the proceedings below. ECF No. 47 at 5.

Heyward opposed the Government's motion. He asserted that his *Rehaif* claim was "not a pure question of law but rather a question of fact" that would require weighing evidence and testimony for the first time, which "should occur in a trial court, not in a court of review." ECF No. 51 at 6. And because "Rule 10(e) is not a device for presenting evidence to this Court that was not before the trial judge," *id.* at 5 (citation omitted), he posited that the Government's proposed supplemental appendix was inadmissible.

This Court granted the motion to supplement the record by order dated January 3, 2022. ECF No. 52. As a result, the record on appeal now includes documents related to Heyward's intake process when he began his probationary period for his South Carolina cocaine possession conviction.

During the intake process, Heyward met with South Carolina Department of Probation, Parole and Pardon Services ("SC PPP") Agent Kelly Polic Savage. Supp. J.A. 3. Agent Savage submitted an affidavit affirming that during this meeting, she went over a "Project Ceasefire" form with him in accordance with SC PPP policy. Supp. J.A. 10, 16. Though a copy of Heyward's form is unavailable due to the lapse in time, Agent Savage provided a "substantially identical" one from 2007 (differing only "cosmetic[ally]" from the one Heyward signed). Supp. J.A. 16. The Project Ceasefire form excerpts in full the language of 18 U.S.C. §§ 922(g), 924(a), and 924(e), and at the bottom, requires the new supervisee to sign his or her name below the following affirmation statement:

23

> I am aware that in view of the above law, I am disqualified from owning or having possession of **any** firearms, ammunition, or other weapons. I understand that if I have a firearm, ammunition, or other type of weapon that I have to disclose these to my agent this date.

Supp. J.A. 13. Agent Savage asserted that in accordance with this form, she "always instruct[ed] [supervisees] that as a result of their conviction, because of federal law, they are prohibited from possessing firearms and ammunition. If they are found in possession of either they can be prosecuted federally." Supp. J.A. 16. And, she specified, "I would have instructed Mr. Heyward in this same manner." *Id.*

The parties proceeded with their briefing. The Government filed its supplemental response brief, making arguments relying on both the supplemental joint appendix and the original district court record. Heyward then replied, opposing the Government's arguments and attacking the reliability of its supplemental evidence.

Finally, in a Rule 28(j) letter filed after oral argument, the Government noted several cases from other federal circuit courts of appeal denying a *Rehaif* claim on plain-error review. Those courts found significant the fact that each relevant state law required the court before which the defendant had pleaded guilty to a § 922(g)(1)-qualifying offense to inform him of the offense's maximum penalty before accepting the plea. The Government argues that these cases further counsel against awarding Heyward relief because before a South Carolina trial court can accept a defendant's guilty plea, it too must first advise the defendant of the offense's maximum penalty. Heyward asks us to ignore this point because he contends the Government waived it by not raising it in its briefing.

24

II.

As the majority correctly notes, Heyward's *Rehaif* claim is analyzed for plain error. To be entitled to plain-error relief, Heyward must show (1) there was in fact an error during his Rule 11 colloquy (2) that was "plain" and (3) "affect[ed] [his] substantial rights." *United States v. Olano*, 507 U.S. 725, 732 (1993); *see* Fed. R. Crim. P. 52(b). He carries the burden of persuasion on each prong. *Olano*, 507 U.S. at 734. "If all three conditions are met," then we "may," in our discretion, correct that plain error, "but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 467 (1997) (cleaned up). Given the Government's concession that a plain error occurred, my analysis begins with the third plain-error prong. Unlike my colleagues, though, I conclude that the analysis ends there and need not proceed any further.

"[I]n most cases," an error that affects substantial rights is a "prejudicial" one—that is, it "affected the outcome of the district court proceedings." *Olano*, 507 U.S. at 734.[4] Specific to guilty pleas, the operative inquiry is whether the defendant has shown "a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004); *accord Greer*, 141 S. Ct. at 2098. The Supreme Court fashioned this "difficult" standard, *Puckett*, 556 U.S. at 135, to "respect the particular importance of the finality of guilty pleas, which usually rest, after all, on a defendant's profession of guilt in open court," *Dominguez Benitez*, 542 U.S. at 82–83.

---

[4] *Rehaif* errors are not "structural," so they do not fall into the narrow category of errors that are per se prejudicial. *Greer*, 141 S. Ct. at 2099–2100.

Indeed, those solemn and sworn declarations of guilt "are indispensable in the operation of the modern criminal justice system." *Dominguez Benitez, 542 U.S.* at 83; *see also United States v. Bowman*, 348 F.3d 408, 417 (4th Cir. 2003) ("[A]n appropriately conducted Rule 11 colloquy can only serve meaningfully if the court is entitled to rely on the defendant's statements made under oath to accept a guilty plea.").

In *Greer*, the Supreme Court demonstrated how appellate courts should analyze whether a *Rehaif* error impacted a defendant's substantial rights. The Court began by reiterating that on plain-error review, it is the *defendant's* burden to show that the *Rehaif* error actually impacted his substantial rights. *Greer*, 141 S. Ct. at 2097–98. That burden is effectively heightened in felon-in-possession cases, the Court explained, because "[i]f a person is a felon, he ordinarily knows he is a felon." *Id.* at 2097. "Thus, absent a reason to conclude otherwise, a jury will usually find that a defendant *knew* he was a felon based on the fact that he *was* a felon." *Id.* "[T]hat reality," the Court poignantly observed, will typically "factor . . . into the [defendant's] decision to plead guilty." *Id.*

Nonetheless, the Court recognized that "there may be cases in which a defendant who is a felon can make an adequate showing on appeal that he would have presented evidence in the district court that he did not in fact know he was a felon when he possessed [a] firearm[]." *Id.* But that "adequate showing" must come from record evidence. *See United States v. Lockhart*, 947 F.3d 187, 192–93 (4th Cir. 2020) (en banc) ("[A] defendant must satisfy the judgment of the reviewing court, *informed by the entire record*, that the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding." (emphasis added) (cleaned up)). As we have long held, there must be a

26

"nonspeculative basis" in "the record as a whole" for a defendant to show that a plain error affected his substantial rights. *United States v. White*, 405 F.3d 208, 223 (4th Cir. 2005). Further, "the mere existence of an error" alone cannot satisfy that burden. *United States v. Massenburg*, 564 F.3d 337, 344 (4th Cir. 2009).[5]

## III.

Federal law prohibits several categories of individuals from possessing firearms, including any person "who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). But Congress has specified that if the qualifying offense is classified as a misdemeanor under state law—like Heyward's South Carolina cocaine possession conviction, S.C. Code Ann. § 44-53-370(d)(3)—it must be punishable by a term of imprisonment exceeding two years. 18 U.S.C. § 921(a)(20)(B). At the time Heyward pleaded guilty, those who "knowingly" violated § 922(g) could be punished by up to ten years in prison. 18 U.S.C. § 924(a)(2) (2018).[6]

---

[5] To hold that the "mere existence" of a plain error entitles a defendant to relief on plain-error review, we have explained, "would amount to a holding that [the] error should be presumed prejudicial." *Massenburg*, 564 F.3d at 344. Indeed, our court once wrongly treated *Rehaif* errors as presumptively prejudicial on plain-error review, but the Supreme Court rejected that approach. *See Greer*, 141 S. Ct. at 2099–2100 (reversing *United States v. Gary*, 954 F.3d 194 (4th Cir. 2020)).

[6] Congress recently increased the statutory maximum punishment for a knowing violation of § 922(g) to fifteen years in prison. Bipartisan Safer Communities Act, Pub. L. No. 117-159, § 12004(c), 136 Stat. 1313, 1329 (2022).

As the majority correctly notes, before 2019, in this Circuit the Government did not need to prove that the defendant knew of his § 922(g) status at the time of his possession of a firearm. *See United States v. Langley*, 62 F.3d 602, 604–07 (4th Cir. 1995) (en banc), *abrogated by Rehaif*, 139 S. Ct. 2191. But that changed after *Rehaif* held that the penalty provision in § 924(a)(2) imposed a scienter element requiring the Government to prove beyond a reasonable doubt the defendant's knowledge of his status. 139 S. Ct. at 2195–97. Without such proof, the Court explained, "the defendant may well lack the intent needed to make his behavior wrongful." *Id.* at 2197.

Yet the *Rehaif* Court did not precisely explain what it meant for a defendant to "know" of his "status." We subsequently explained in *United States v. Moody* that a defendant need only know of the *facts* giving rise to his § 922(g) status. 2 F.4th 180, 197–98 (4th Cir. 2021). Specific to § 922(g)(1), we held that the Government need only show at trial that the defendant knew he was convicted of an offense carrying the requisite maximum term of imprisonment. *Id.* at 197. In so holding, we rejected Moody's argument that *Rehaif* required proof that a § 922(g)(1) defendant knew "that this status prohibits firearm possession." *Id.*; *see also United States v. Collins*, 982 F.3d 236, 242 n.2 (4th Cir. 2020) (summarily rejecting an identical argument). We reasoned that adopting Moody's argument "would improperly elevate the mens rea required for conviction from knowledge to willfulness." *Moody*, 2 F. 4th at 197–98 (cleaned up). Moreover, we observed that Moody's argument was nothing more than "a mistake-of-law defense," which the Supreme Court in *Rehaif* "acknowledged . . . is not a defense to a criminal charge." *Id.* at 198. Indeed, the Supreme Court "carefully distinguished a mistake of law from a mistake about one's

28

legal status," *id.* (citing *Rehaif*, 139 S. Ct. at 2198), a distinction that Moody's argument "ignore[d]," *id.* We therefore concluded that Moody's "mistake-of-law defense," found no support in either the relevant statutes or the *Rehaif* decision. *Id.* at 197–98.

In accordance with *Greer* and *Moody*, then, Heyward must produce some evidence tending to show that he did not know that his South Carolina cocaine possession offense was punishable by a term of imprisonment exceeding two years to be entitled to plain-error relief. He has not done so. None of the evidence in the district court record supports his claim. None of the evidence in the Government's supplemental record (which the majority erroneously jettisons in a footnote) supports his claim. And nothing the Government cites in its Rule 28(j) letter supports his claim. Quite simply, Heyward has not met his burden to prove that he would have gone to trial absent the plain *Rehaif* error.

## A.

### 1.

Assuming the majority correctly limited its analysis to just the evidence the parties developed in the district court, that "record as a whole provides no nonspeculative basis for concluding," *White*, 405 F.3d at 223, "that, but for the [*Rehaif*] error, [Heyward] would not have entered the plea," *Dominguez Benitez*, 542 U.S. at 83.

In the consolidated *Greer* case, the Supreme Court considered the appeal of Michael Gary, who pleaded guilty to a § 922(g)(1) offense before *Rehaif* and sought to have his guilty plea vacated on plain-error review. 141 S. Ct. at 1096. In finding that Gary failed to meet his burden to prove that the plain *Rehaif* error affected his substantial rights, the Court

found two facts significant: (1) Gary "[n]ever disputed the fact of [his] prior convictions"; and (2) he "admitted that he was a felon when he pled guilty." *Id.* at 2098.

These same two facts are present here. Heyward admitted during his Rule 11 colloquy that, as the Government represented, he was "[a] convicted felon on July 18th and 19th, 2014." J.A. 25–26. We are obliged to take Heyward at his word. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court [during a Rule 11 colloquy] carry a strong presumption of verity."); *United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005) ("[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established.").

Heyward has also "[n]ever disputed the fact of [his] prior conviction[]." *Greer*, 141 S. Ct. at 2098. To the contrary, he readily *admitted* in his letter to the district court that his 2006 conviction "made [him] a prohibited person to have a gun." Sealed J.A. 435. And while he objected to the PSR's use of the second-degree murder cross-reference, he did not object to its notation that he was a convicted felon at the time of the offense. *See Greer*, 141 S. Ct. at 2098 (noting that "information contained in a [PSR]" may be "relevant and reliable" to the court's inquiry).

Even more importantly, nowhere in the record did Heyward ever question the fact that his prior South Carolina conviction was punishable by more than two years in prison. One would expect such a protest to have arisen during the *Duncan* hearing when the Assistant Solicitor confronted Heyward with the fact that his cocaine possession offense "carrie[d] over a year [in prison]." Sealed J.A. 267. But he did not question that factual premise. Rather, Heyward only disputed the legal conclusion the Assistant Solicitor drew

30

from that fact—that "federally [he was] not allowed to possess a gun"—stating, "I guess so. It says on my gun act I pleaded to a misdemeanor and I cannot possess ammunition. But it didn't say I can't own a firearm." *Id.* So even at the most natural point in the record in which one would expect to find Heyward to contest his knowledge about the maximum possible penalty for his prior South Carolina conviction, there is nothing to be found. *Accord* Majority Op. 13 (agreeing that "[n]either the [G]overnment's question nor Heyward's answer focuses on" "what [Heyward] knew at the time of *the offense*"). Heyward's asserted lack of knowledge of the legal consequences of his prior conviction is, as we held in *Moody*, irrelevant. *See* 2 F.4th at 197–98.

All told, the record shows that Heyward recognized that he incurred a prior state conviction and admitted, under oath, that it made him a "felon" for § 922(g)(1)'s purposes. This record thus mirrors that of Michael Gary's, which the Court in *Greer* held to be insufficient to carry his burden on plain-error review. *See* 141 S. Ct. at 2097–98. While Heyward now asserts that he would have contested his knowledge of his status at a trial, he has pointed to *no* probative evidence in the district court record on that point. He therefore is not entitled to plain-error relief.

2.

Notwithstanding that clear conclusion, there are two views presented on appeal in opposition—the one Heyward asserts in his supplemental briefing, and the one the majority asserts on his behalf. Heyward asserts that he is entitled to plain-error relief because the record shows he never definitively knew that he could not possess a firearm. The majority holds that he is entitled to plain-error relief for a different reason: he did not know that his

31

prior South Carolina conviction was punishable by a term of imprisonment exceeding two years. Applying the plain-error standard as instructed by the Supreme Court, neither view withstands scrutiny.

Relying most prominently on his *Duncan* hearing testimony, Heyward argues in his briefing that he "did not believe his prior state misdemeanor conviction disqualified him from possessing a gun in 2014." Supp. Opening Br. 10.[7] But as previously stated, that is not the relevant inquiry.[8] Heyward's "mistake-of-law defense" mirrors the one we rejected in *Moody*. *See* 2 F.4th at 197–98. That should end this case.

The majority ignores this determinative point by opining that Heyward's sporadic references in his supplemental briefing to his "felon" status addressed the controlling inquiry: whether he knew that his 2006 South Carolina conviction was punishable by a term of imprisonment exceeding two years. It blames "an overly broad shorthand for what the statute actually forbids" as the source of confusion. Majority Op. 11. But there is no confusion about how Heyward needed to frame his argument because *Moody* was published several months *before* Heyward filed his Supplemental Opening Brief. We are

---

[7] *See also* Supp. Opening Br. 12 (asserting that the letter does not prove that in 2014 he knew "he had a conviction which qualified to make him a convicted felon under federal law"); Supp. Reply Br. 6 ("[T]here is no way to establish that Mr. Heyward knew he was a felon for the purposes of 18 U.S.C. § 922(g)(1)."); Supp. Reply Br. 10 ("Mr. Heyward did not understand, at the time he possessed the weapon, that his prior state misdemeanor conviction could qualify as a felony for purposes of federal law.").

[8] In raising this point in its Supplemental Response Brief, the Government is not, as the majority contends, suggesting that Heyward waived his *Rehaif* claim. It is asking us to reject Heyward's *Rehaif* claim on the merits because it is only supported by evidence that would be inadmissible at trial.

not in the practice of making arguments for litigants; we address only those arguments squarely presented for our review. *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (noting that courts—even when dealing with pro se litigants—should not "conjure up questions never squarely presented" or "construct full blown claims from sentence fragments"). The majority has therefore exceeded its proper role by conjuring a new issue for appellate review out of whole cloth.

Equally erroneous is the majority's subsequent merits analysis. Despite recognizing that none of Heyward's proffered evidence "squarely confronts precisely what the [G]overnment would have been required to prove at a trial," Majority Op. 11—whether he knew his 2006 conviction was punishable by a term of imprisonment exceeding two years——it nonetheless finds that Heyward is entitled to plain-error relief. To reach that conclusion, the majority cites: (1) Heyward's statements that he did not know that his prior conviction barred him from owning a firearm under federal law; (2) the Government's failure to cite evidence that Heyward knew that his prior conviction was punishable by a term of imprisonment exceeding two years; (3) speculation about Heyward having been "told" by some unnamed individuals that he was a covered person under § 922(g)(1) during the district court proceedings; and (4) the views of a single Supreme Court Justice about the impact of a defendant having only received a one-year suspended sentence upon the conviction serving as the basis for a § 922(g)(1) offense. Majority Op. 9–13. None of these points, individually or collectively, satisfies Heyward's burden.

First, as previously noted, binding precedent precludes the majority's reliance upon Heyward's statements that he did not know his 2006 conviction made it illegal for him to

33

own a firearm. As *Moody* instructed, the only relevant question is whether "Heyward knew, when he possessed the firearm, that his prior state conviction was punishable by more than two years of imprisonment." Majority Op. 12; *see Moody*, 2 F.4th at 198. And the majority correctly recognizes that none of the record evidence answers that factual question. *See id.* at 12–13 (detailing how each piece of evidence lacks any probative value into "what [Heyward] knew at the time of the offense"). Notwithstanding, the majority concludes that Heyward is entitled to plain-error relief solely because he "consistent[ly] deni[ed]" in 2014 that his prior conviction made it illegal for him to possess a firearm. *Id.* at 14. That holding ignores what the majority itself seems to recognize was *Moody*'s clear mandate: such evidence is irrelevant to the *Rehaif* analysis. *See Moody*, 2 F.4th at 197–98; *see also Payne v. Taslimi*, 998 F.3d 648, 654 (4th Cir. 2021) ("[W]e are bound by prior panel decisions.").

Second, in a similar vein, the majority wrongly faults the *Government* for *Heyward's* inability to proffer evidence relevant to the question of whether he knew his prior South Carolina conviction was punishable by a term of imprisonment exceeding two years. After conceding that the record evidence does not at all prove "what [Heyward] knew at the time of the offense," Majority Op. 13, the majority posits that this ambiguity "plagues the [G]overnment's reliance" on that evidence to rebut Heyward's case for plain-error relief, *id.* That logic turns the plain-error standard on its head. It is not the Government's burden to prove that Heyward knew about his status. It is *Heyward*'s "difficult" task to proffer enough evidence to convince us that there is a reasonable probability that he would have chosen to go to trial rather than plead guilty. *Puckett*, 556 U.S. at 135; *see United States v. McCullock*, 991 F.3d 313, 319 (1st Cir. 2021)

34

("McCullock's reply brief faults the [G]overnment for not proving with record-based facts that the [proceedings below would have resulted differently absent the plain error]. But it is on McCullock to prove all four plain-error factors, not on the [G]overnment to disprove them.").

Third, the majority finds significant the fact that Heyward's letter to the district court came "after 'repeatedly' being 'told he had a qualifying felony conviction for purposes of § 922(g)(1),' whereas the overarching point of the letter was to stress that he had believed at the time that he did not have any such convictions." Majority Op. 13 (quoting Supp. Reply Br. 8)). Neither proposition carries Heyward's burden.

For starters, whether Heyward was "repeatedly" told about the legal effect of his prior South Carolina conviction is irrelevant because it does not tend to prove that he lacked knowledge that his 2006 South Carolina conviction was punishable by more than two years in prison. If the Government is blameworthy for relying on Heyward's knowledge of the "'legal consequences' of his conviction," Majority Op. 12 (quoting *Moody*, 2 F.4th at 198), that same evidence cannot also bolster Heyward's case for plain-error relief.

More fundamentally, my colleagues' characterization of the letter's purpose finds no support in the record. Heyward wrote the letter to clarify factual assertions the Government made during the hearing on the second-degree murder cross-reference that he believed "were untrue or [taken] out of context." Sealed J.A. 432. To that end, he detailed the circumstances of the shooting, Sealed J.A. 432–33, and described his personal history so that the court could "get a better perspective of who and what type of person that I am and not the way things appear on paper." Sealed J.A. 433–35. During that latter discussion,

35

he informed the court of his criminal history, including the cocaine possession offense that "*made [him] a prohibited person to have a gun*." Sealed J.A. 435 (emphasis added). He concluded by asking the court "for merc[]y and to please consider sentencing me under my [G]uidelines on the day of my sentencing." *Id.* Simply put, Heyward did not intend for the letter to "clarify exactly what he knew and when" as to his felon status, as the majority asserts. Majority Op. 14. It was a plea "for merc[]y" during sentencing, specifically and repeatedly directed at the cross-reference that significantly increased his advisory Guidelines range. Sealed J.A. 435. The circumstances under which Heyward wrote this letter thus do not support his argument for plain-error relief.

Finally, the majority often cites Justice Sotomayor's separate opinion in *Greer*, not joined by any other Justice, which asserted that it may be relevant to a *Rehaif* claim that all of a defendant's prior convictions were misdemeanors. Majority Op. 5–6, 13 (citing *Greer*, 141 S. Ct. at 2103 (Sotomayor, J., concurring in part and dissenting in part)). No similar viewpoint appears in the *Greer* majority opinion and, with respect to Justice Sotomayor's solitary view, *Moody* precludes the majority's reliance upon it. It does not matter if Heyward thought his 2006 conviction was a misdemeanor or a felony. All that matters is if he knew it was punishable by a term of imprisonment exceeding two years, and the majority recognizes there is no probative evidence on that particular question.

In sum, the only fact potentially supporting the result the majority reaches is that Heyward's one-year actual sentence was suspended *in toto*. But there is no record evidence that "squarely confronts" whether he knew he *could have* received a sentence exceeding two years' imprisonment. Majority Op. 11. The majority is thus left only to speculate about

36

what Heyward might or might not have known when he possessed the firearm that caused Warren's death. Yet speculation alone cannot warrant plain-error relief and Heyward is due none here. *See, e.g.*, *United States v. Knight*, 606 F.3d 171, 179 (4th Cir. 2010) (rejecting a plain-error claim that relied on "pure speculation"); *White*, 405 F.3d at 223–24 (same).

## B.

The majority's missteps do not end there. The Government has submitted—and this Court has already accepted—additional evidence relevant to Heyward's *Rehaif* claim that confirms that he is not entitled to relief. Our prior ruling was in accord with the settled practice of our sister circuits, which in turn was endorsed in *Greer*. But in a single footnote, the majority diverges from this settled practice. I would not and for good reason.

## 1.

As a general rule, federal circuit courts of appeal avoid creating circuit splits without a "strong" or "compelling" reason for doing so. *See United States v. Thomas*, 939 F.3d 1121, 1130 (10th Cir. 2019) (collecting cases from the First, Second, Third, Fifth, Seventh, Ninth, and Federal Circuits). The reason is simple: "federal law . . . is supposed to be unitary." *Wash. Energy Co. v. United States*, 94 F.3d 1557, 1561 (Fed. Cir. 1996) (citation omitted). That caution must be amplified when, as here, no party ever formally requested us to take a position on the issue.[9] *Cf. Herrera v. Churchill McGee, LLC*, 680 F.3d 539,

---

[9] Of course, the Government formally moved to introduce the supplemental evidence into the record on appeal. Heyward appropriately opposed that request in writing before a single judge of this Court who then granted the Government's request. But (Continued)

552 n.9 (6th Cir. 2012) (refusing to consider sua sponte a "purely legal issue" because doing so would have required the court take a position on an *already existing* circuit split).

The source of this dispute is Federal Rule of Appellate Procedure 10(e)(2), which permits a party to ask this Court to supplement the record on appeal "[i]f anything material to either party is omitted from or misstated in the record by error or accident." Before today, each circuit to have applied this rule to plain-error *Rehaif* claims permitted the Government to introduce evidence not first introduced in the district court. *United States v. Lara*, 970 F.3d 68, 88–90 (1st Cir. 2020); *United States v. Miller*, 954 F.3d 551, 559–60 (2d Cir. 2020); *United States v. Brandon*, 965 F.3d 427, 432 n.2 (5th Cir. 2020) (granting a consent motion under Rule 10(e) and observing that the materials, consisting of documents related to a state conviction, were subject to judicial notice); *see also United States v. Maez*, 960 F.3d 949, 965–66 (7th Cir. 2020) (considering evidence not submitted to the jury).

To paraphrase those courts' persuasive rationales, it is not the Government's fault that it did not proffer evidence showing Heyward's knowledge of the facts giving rise to his felon status. The parties and district court all followed then-existing (albeit incorrect) circuit precedent about that element of the offense. *See Langley*, 62 F.3d at 604–07 (holding that a prosecution under §§ 922(g)(1) and 924(a)(2) did not require evidence of the defendant's knowledge of the facts giving rise to his felon status). In effect, our pre-*Rehaif*

Heyward neither moved for reconsideration of that order nor challenged it in his Supplemental Opening Brief; he took only a passing shot at it during oral argument. In any other case, we would deem this issue waived. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) (reiterating that any issue not developed in an opening brief is waived); *United States v. Cornell*, 780 F.3d 616, 625 n.2 (4th Cir. 2015) (observing that any issue raised for the first time at oral argument is ordinarily waived).

"error" caused the Government to not proffer that evidence during the Rule 11 colloquy. Fed. R. App. P. 10(e)(2); *accord Lara*, 970 F.3d at 89 ("[T]he [G]overnment's failure to introduce additional evidence of Williams's knowledge of his status as a felon was not a problem of its own making. . . . [T]he [G]overnment was acting in accord with the requirements of proof at the time [prior to *Rehaif*]."). It would be manifestly unjust to now "penalize the [G]overnment for its failure to introduce evidence that it had but that, prior to *Rehaif*, it would have been precluded from introducing." *Miller*, 954 F.3d at 560. What's more, the Supreme Court all but endorsed this rationale when, in *Greer*, the Court specifically cited Rule 10(e) in noting that a defendant might "make an adequate showing on appeal that he would have presented evidence in the district court that he did not in fact know he was a felon when he possessed firearms." 141 S. Ct. at 2097.

Given this weight of authority, I would conclude that when a defendant asserts a *Rehaif* claim for the first time on appeal, Rule 10(e) affords the Government the same opportunity as the defendant to supplement the record on appeal with reliable evidence relevant to our plain-error analysis even though it was not first made part of the district court record. *See Greer*, 141 S. Ct. at 2097; *Lara*, 970 F.3d at 89; *Miller*, 954 F.3d at 560.[10] And because the Government's supplemental evidence met, and continues to meet, that standard, there is no reason to depart from the prior single-judge order on this issue.

---

[10] *Lara*, *Miller*, and *Brandon*—all of which were decided pre-*Greer*—considered supplemental evidence only at prong four of the plain-error analysis. *Greer*, however, seemed to indicate that such evidence is properly considered at prong three. It is unnecessary to disentangle this doctrinal nuance here because both parties proceed under the assumption that the Government's supplemental evidence is considered at prong three.

39

But the majority takes a different view. After reciting Rule 10(e)(2), the majority summarily declares that the Government's supplemental evidence was not omitted "by error or accident." Majority Op. 8 n.3 (quoting R. 10(e)(2)). The majority's only effort to distinguish *Lara*, *Miller*, and *Brandon* is the fact that Agent Savage's affidavit was created during the pendency of this appeal. Even accepting that premise *arguendo*, it does not justify excluding the rest of the Government's supplemental evidence, all of which was created before Heyward's guilty plea. This largely *ipse dixit* analysis falls well short of the type of "strong" or "compelling" justification one would expect to support the sua sponte creation of a circuit split. *Thomas*, 939 F.3d at 1130.[11]

---

[11] The majority's decision also may do an impermissible workaround of the law of the case doctrine, which generally demands that once "a court decides upon a rule of law, that decision . . . continue[s] to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). It is true that under Federal Rule of Appellate Procedure 27(c), "[t]he court may review the action of a single judge." And while the majority says that one court has precedentially adopted the categorical rule that the law of the case doctrine is inapplicable to single-judge orders, *see* Majority Op. 8 n.3 (citing *TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1157 n.5 (Fed Cir. 2004)), this Court has never adopted such a prohibition. We have only held that the law of the case doctrine does not apply to single-judge orders on *jurisdictional* issues, *CNF Constructors, Inc. v. Donohoe Constr. Co.*, 57 F.3d 395, 397 n.1 (4th Cir. 1995), and that is the identical context in which the Federal Circuit has also done so, *TypeRight Keyboard Corp.*, 374 F.3d at 1157 n.5; *see also Nilssen v. Motorola, Inc.*, 203 F.3d 782, 785 & n.2 (Fed. Cir. 2000). There are important distinctions between jurisdictional issues and purely procedural ones such as whether to supplement the record on appeal. For one, while we have an independent duty to ascertain our jurisdiction, *see CNF Constructors, Inc.*, 57 F.3d at 397 n.1, no such duty exists for record supplementation issues. And there are greater reliance interests at stake here, as the Government relied on the admittance of its supplemental evidence in framing its merits arguments in its supplemental briefing. *Cf. United States v. Philip Morris USA Inc.*, 801 F.3d 250, 257 (D.C. Cir. 2015) ("[I]nconsistency is the antithesis of the rule of law." (cleaned up)). Ultimately, it is unnecessary to decide this issue because the majority is simply wrong on the merits.

The majority further notes that, assuming it had the "inherent equitable authority to supplement the record on appeal," it would not exercise that authority in this case. That decision is erroneous. Majority Op. 8 n.3 (citation omitted). After all, as one prominent treatise has observed, *Rehaif* plain-error cases are ones in which "it would be illogical not to supplement the record given the nature of the contention at issue." 16A Charles Alan Wright, Arthur R. Miller, & Catherine T. Struve, *Federal Practice & Procedure* § 3956.4 & n.31 (5th ed. Apr. 2022 update) (citing *Rehaif*, 139 S. Ct. at 2200; and then citing *Greer*, 141 S. Ct. at 2097, 2100). And courts generally agree that a "primary factor" used in considering whether to do so "is whether acceptance of the proffered material into the record would establish beyond any doubt the proper resolution of the pending issues." *CSX Transp., Inc. v. City of Garden City*, 235 F.3d 1325, 1330 (11th Cir. 2000). As explained below, the Government's supplemental evidence only underscores the conclusion that Heyward has not come close to meeting his burden on plain-error review—providing all the more reason why our prior order on this issue should remain undisturbed.

In sum, the consequences of the majority's decision are far greater than its one-footnote treatment of this issue would imply. The majority creates a circuit split while at the same time setting the precedent that this Court's "inherent equitable authority to supplement the record on appeal," Majority Op. 8 n.3 (citation omitted), is not worth exercising even when the Government has proffered reliable evidence that "establish[es] beyond any doubt" that a defendant is not entitled to plain-error relief, *CSX Transp., Inc.*, 235 F.3d at 1330. If these facts do not permit the Government to supplement the record on appeal, it is hard to envision those that do.

41

2.

The supplemental record evidence confirms what was already evident from the district court record: there is no reasonable probability that Heyward would have elected to go to trial had his Rule 11 colloquy complied with *Rehaif*.

Recall that during an exchange with the Assistant Solicitor during his state *Duncan* hearing, Heyward initially disputed the claim that "federally [he was] not allowed to possess a gun" by testifying as follows: "I guess so. It says on my gun act I pleaded to a misdemeanor and I cannot possess ammunition. But it didn't say I can't own a firearm." Sealed J.A. 267. As the parties acknowledged during oral argument, Heyward's reference to his "gun act" is directed to the Project Ceasefire form that he signed during his intake with the SC PPP. Indeed, a Scheduling Entry from SC PPP's system shows that Heyward "completed" "[a]ll forms" during his intake, including "Project Ceasefire." Supp. J.A. 3.

The exact form Heyward signed was unavailable, so the Government introduced a copy of the form that went into effect in 2007, one year after his intake. Given this, the parties dispute to some extent what Heyward's Project Ceasefire form said about the legal consequences of his cocaine possession conviction. *Compare* Supp. J.A. 13 (the 2007 form's affirmation statement requiring the supervisee to certify that he knew he was "disqualified from owning or having possession of *any* firearms"), *with* Sealed J.A. 267 (Heyward's assertion that the form only said he could not possess ammunition). But those disputes are immaterial. Whatever the form may have said about the legal consequences of his cocaine possession is irrelevant. *See Moody*, 2 F.4th at 197–98.

42

What does matter—and is also undisputed—is that Heyward "completed" a form that reflected he was now governed by 18 U.S.C. § 922(g).  Supp. J.A. 3; *see* Supp. J.A. 13; Sealed J.A. 267. Moreover, Heyward did not refute the Assistant Solicitor's representation that he had been convicted of a crime "carr[ying] over a year [in prison]," and admitted that his "gun act" stated he was prohibited from "possess[ing] ammunition." Sealed J.A. 267. If he believed he was not convicted of crime carrying the requisite maximum penalty for § 922(g)(1) purposes, there would be no basis for his understanding that he was barred from possessing ammunition. Heyward only harbored a mistake of law that despite his prior conviction and inability to possess ammunition, he could possess a firearm. But, again, such a mistake of law does not a plain *Rehaif* error make. *See Moody*, 2 F.4th at 197–98.

The Government's supplemental evidence provides reliable and probative guidance on the only controlling inquiry here—whether Heyward knew at the time of his offense that he was convicted of an offense carrying a maximum term of imprisonment exceeding two years. It thus was properly accepted into the record on appeal, and confirms that Heyward has not satisfied his burden on plain-error review.

## C.

Finally, pursuant to Federal Rule of Appellate Procedure 28(j), the Government has submitted for our consideration three additional authorities from other federal circuit courts of appeals. I find the reasoning in those authorities persuasive, bolstering my conclusion that Heyward's *Rehaif* claim is foreclosed.

The Government has cited decisions from the First, Second, and Fifth Circuits in which a defendant asserted on plain-error review that he did not know about the facts that made his prior state conviction a "felony" for purposes of § 922(g)(1). The courts rejected each respective claim because the relevant state's law required that the defendant, when pleading either guilty or nolo contendere, be advised of the offense's maximum penalty. Given this, the courts considered it a certainty that the defendant was aware of the facts giving rise to his covered status at the time of his § 922(g)(1) offense. *United States v. Burghardt*, 939 F.3d 397, 404 (1st Cir. 2019) (considering New Hampshire law); *United States v. Bryant*, 976 F.3d 165, 175–76 (2d Cir. 2020) (considering Virginia law); *United States v. Huntsberry*, 956 F.3d 270, 285–86 (5th Cir. 2020) (considering Louisiana law). The Government asserts that these cases support its argument here because South Carolina, too, requires that a defendant pleading guilty to a state law offense be advised of the maximum penalty before pleading guilty. *See Pittman v. State*, 524 S.E.2d 623, 624 (S.C. 1999).

Heyward does not challenge this aspect of South Carolina law, but instead counters that the Government has waived reliance on these authorities by not citing them in its merits briefing. *See, e.g., United States v. Ashford*, 718 F.3d 377, 381 (4th Cir. 2013) (explaining that litigants may not use Rule 28(j) letters "as a means to advance new arguments couched as supplemental authorities"). Even if that were true, our waiver rule is "not jurisdictional," and "we possess the discretion under appropriate circumstances to disregard [a party's] inattention to a particular argument or issue." *United States v. Holness*, 706 F.3d 579, 592 (4th Cir. 2013). To guide that exercise of discretion, we typically look to factors such as

44

"the size of the record and its complexity, the degree to which the court could be certain of its resultant legal analysis, and whether avoiding the issue would 'result in protracted, costly, and ultimately futile proceedings in the district court.'" *Id.* (quoting *United States v. Giovannetti*, 928 F.2d 225, 227 (7th Cir. 1991)).

The latter two factors strongly counsel in favor of excusing the Government's alleged waiver here. Applying the uncontroverted import of *Burghardt*, *Bryant*, and *Huntsberry* would provide even more certainty to the analysis of Heyward's plain-error claim, a result that gives full credence to the Supreme Court's demand that appellate courts "consider the *entire* record" on plain-error review. *Greer*, 141 S. Ct. at 2098. Moreover, enforcing the Government's alleged waiver now would be futile because on remand, it would simply direct the factfinder to this same controlling principle of state law to reach the same conclusion that can already be drawn on the existing record. Resolving the issue now on plain-error review would therefore "promote judicial economy," *Holness*, 706 F.3d at 593, *and* the fairness, integrity, and public reputation of judicial proceedings, *see United States v. Cotton*, 535 U.S. 625, 634 (2002) (observing that "[t]he real threat . . . to the 'fairness, integrity, and public reputation of judicial proceedings'" would be to afford a defendant plain-error relief despite "overwhelming and uncontroverted evidence" of his guilt (citation omitted)).[12]

---

[12] The majority's observation that these authorities were available to the Government when it filed its response brief, while true, is irrelevant. Rule 28(j) only speaks of "pertinent and significant authorities"; it does not require that the authorities cited therein be *new*. *See Cunico v. Pueblo Sch. Dist. No. 60*, 917 F.2d 431, 434 n.1 (10th Cir. 1990) ("[Rule 28(j)] does not require that the supplemental authority be unavailable at the (Continued)

As noted, South Carolina requires state court judges to inform a defendant of an offense's maximum punishment before accepting his guilty plea. *Pittman*, 524 S.E.2d at 624. It therefore "seems virtually certain" that Heyward was told "face-to-face what his maximum sentence could be, an inference bolstered by his lack of appeal of [that] plea[] at the time for failure to comply with [South Carolina] law." *Burghardt*, 939 F.3d at 404. Indeed, nowhere in the modest record developed by the parties does Heyward ever intimate that his state court plea hearing violated this mandate. These facts, when considered in conjunction with all of the evidence previously discussed, leave "little possibility that [Heyward] was ignorant of" the facts giving rise to his status. *Huntsberry*, 956 F.3d at 285; *accord Bryant*, 976 F.3d at 176. There is simply no good reason to turn a blind eye to this relevant and reliable evidence on plain-error review.

IV.

Despite bearing the burden of persuasion, Heyward supports his plain-error argument with no evidence of his own. He mostly relies on negative inferences drawn from evidence that the *Government* has proffered. And what evidence he does rely upon lends no insight into whether he knew when he committed the instant § 922(g)(1) violation that his prior South Carolina conviction for possessing cocaine offense carried a maximum term

---

time of the briefing[.]"); *PFS Distrib. Co. v. Raduechel*, 574 F.3d 580, 588 n.2 (8th Cir. 2009) (noting the "prefer[ence] that authorities cited in a 28(j) letter" be new, but still considering on the merits the relevance of an authority that was available to counsel before oral argument yet cited only for the first time in a post-argument Rule 28(j) letter). The Government's strategy is by no means the preferred one, but it is textually permissible.

of imprisonment exceeding two years. Heyward has not come close to meeting his burden of proving there is a reasonable probability that, had he been informed of the knowledge-of-status element during his plea colloquy, he would have elected to go to trial instead of pleading guilty.

I therefore respectfully dissent and would affirm the judgment of the district court.[13]

---

[13] Rejecting Heyward's plain-error argument would require consideration of his additional claim on appeal that the district court erred in cross-referencing second-degree murder when calculating his total offense level before affirming the district court's judgment.

Even assuming the district court committed legal error by applying the principles governing an "imperfect self-defense" theory under South Carolina law to the cross-reference issue, any such error was harmless. *See United States v. Hargrove*, 701 F.3d 156, 161 (4th Cir. 2012) (explaining that procedural sentencing errors are reviewed for harmlessness). Heyward claimed only that voluntary manslaughter was the appropriate cross-reference because he feared that he was being robbed when he shot Warren. But the district court found as fact that this story was "incredible," instead finding that Heyward "was engaged in a drug deal" and acted "in a drug-induced paranoia" when he shot Warren. J.A. 123; *see also* J.A. 116–29. That finding is reviewed only for clear error, *United States v. Lynn*, 912 F.3d 212, 216 (4th Cir. 2019), a standard that requires giving considerable deference to the district court as the factfinder, *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–75 (1985). Moreover, within this already deferential standard, "credibility determinations are deserving of the *highest degree* of appellate deference." *Teleguz v. Zook*, 806 F.3d 803, 812 (4th Cir. 2015) (emphasis added) (cleaned up). Heyward cannot surmount this heavy burden. Sufficient evidence supported the district court's finding that his story was incredible, which in turn justified its cross-reference to the second-degree murder guideline when calculating Heyward's Guidelines range.